THE STATE OF OHIO, APPELLANT, v. BROWN, APPELLEE.

[Cite as State v. Brown, 143 Ohio St.3d 444, 2015-Ohio-2438.]

(No. 2014–0104—Submitted February 3, 2015—Decided June 23, 2015.)

———

O'DONNELL, J.

{¶ 1} The state of Ohio appeals from a judgment of the Sixth District Court of Appeals that reversed Terence Brown's conviction for possession of oxycodone and held that the trial court should have suppressed the evidence obtained following a traffic stop for a marked lane violation made by a township police officer who acted without statutory jurisdiction. The appellate court concluded that the traffic stop was unreasonable pursuant to Article I, Section 14 of the Ohio Constitution because the township officer lacked statutory authority to make a stop for a marked lane violation on an interstate highway, and it suppressed the evidence obtained from the search of Brown's vehicle.

{¶ 2} It is undisputed that the township police officer in this case exercised law-enforcement powers not granted to township police officers by the General Assembly; thus, because the officer acted without authority to stop Brown for a minor misdemeanor traffic offense on an interstate highway, the traffic stop, the arrest, and the search were unreasonable and violated Article I, Section 14 of the Ohio Constitution.

{¶ 3} Accordingly, we affirm the judgment of the appellate court.

### Facts and Procedural History

{¶ 4} On the evening of March 16, 2011, a Lake Township patrol officer and canine handler, Kelly Clark, pulled from the median on Interstate 280 into the passing lane and observed the passenger-side tires of a Chevy Impala momentarily cross the solid white fog line for a distance of approximately 100 feet. Clark pulled her police vehicle alongside the Impala and observed that the driver, Terence Brown, was staring directly ahead and did not look over at her. Clark decided to stop Brown for leaving the lane of travel approximately two and one half miles from where the violation occurred. It is undisputed that Clark lacked authority to stop a motorist for a marked lane violation on an interstate highway.

{¶ 5} Brown had a suspended driver's license and an active felony warrant in Michigan. The record here, however, does not disclose whether Officer Clark was aware of those facts when she walked her drug dog around the Impala, leading to the discovery of 120 oxycodone tablets and a baggie of marijuana.

{¶ 6} The state thereafter indicted Brown for aggravated possession of drugs. Brown filed a motion to suppress, but the court denied it, finding that Clark had probable cause to stop Brown for a marked lane violation. Brown subsequently pleaded no contest to aggravated possession of drugs, and the trial court sentenced him to a mandatory term of three years in prison.

{¶ 7} Brown appealed to the Sixth District Court of Appeals, asserting that because Clark lacked statutory authority to stop him for a marked lane violation on an interstate highway, the stop and the subsequent arrest and search violated his right to be free from unreasonable searches and seizures pursuant to the

Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. The appellate court determined that the stop did not violate the Fourth Amendment, because Clark had probable cause to believe Brown had committed a misdemeanor in her presence. However, the court held that the stop was unreasonable and violated the Ohio Constitution because the marked lane violation occurred outside Clark's territorial jurisdiction and there were no extenuating circumstances that called for the township police officer to initiate the extraterritorial stop. Concluding that the trial court should have suppressed the drug evidence, the appellate court reversed Brown's conviction.

{¶ 8} We accepted the state's discretionary appeal on the following proposition of law: "A violation of R.C. 4513.39 does not rise to the level of a constitutional violation under Article I, Section 14 of the Ohio Constitution or the Fourth Amendment to the United States Constitution; therefore, the exclusionary rule cannot be invoked to suppress the fruits of any such statutory violation." 138 Ohio St.3d 1467, 2014-Ohio-1674, 6 N.E.3d 1204.

## The State's Contentions

{¶ 9} The state argues that the prohibitions against unreasonable searches and seizures set forth in the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution are nearly identical and should be read in harmony. It further relies on our decision in *State v. Jones*, 121 Ohio St.3d 103, 2009-Ohio-316, 902 N.E.2d 464, for the proposition that a search or seizure outside an officer's territorial jurisdiction does not violate the Fourth Amendment, provided that the officer has probable cause, and it urges us to hold that Article I, Section 14 of the Ohio Constitution affords no greater protection than that afforded by the Fourth Amendment to the United States Constitution. Finally, the state contends that the violation of a statute does not, by itself, rise to a constitutional violation requiring suppression of evidence, and therefore the fact that a statute provides no remedy for its violation indicates a policy decision by the legislative branch of government that should not be disturbed by the judicial branch.

## Brown's Contentions

{¶ 10} Brown contends that the township officer lacked statutory authority to stop any motorist on an interstate highway for a marked lane violation. Claiming that the Ohio Constitution is a document of independent force, he notes that in determining whether an extraterritorial stop violates the Ohio Constitution, we have considered the totality of the circumstances and balanced the government's interests against the privacy right of the accused to decide whether the stop was reasonable. In this case, he urges that the violation of the statute rose to a

constitutional infringement, and therefore the proper remedy is for the court to exclude the drug evidence.

{¶ 11} Accordingly, the issue presented on this appeal is whether a traffic stop made without statutory jurisdiction or authority violates the protection against unreasonable searches and seizures afforded by Article I, Section 14 of the Ohio Constitution.

### Extraterritorial Arrests

#### *Common Law*

{¶ 12} At common law, police officers had no authority to make warrantless arrests outside the jurisdiction of the political entity that appointed them to office; unless they were in hot pursuit of a suspected felon fleeing that jurisdiction, officers making an extraterritorial arrest acted outside their official capacity and were therefore treated as private citizens. *See, e.g., Fairborn v. Munkus,* 28 Ohio St.2d 207, 209, 277 N.E.2d 227 (1971); *State v. Zdovc,* 106 Ohio App. 481, 485–486, 151 N.E.2d 672 (8th Dist.1958); *State v. Eriksen,* 172 Wash.2d 506, 259 P.3d 1079 (2011), ¶ 8–9; *Commonwealth v. Limone,* 460 Mass. 834, 837, 957 N.E.2d 225 (2011); *Bost v. State,* 406 Md. 341, 351, 958 A.2d 356 (2008), fn. 6; *People v. Lahr,* 147 Ill.2d 379, 382, 168 Ill.Dec. 139, 589 N.E.2d 539 (1992); *State v. Stahl,* 838 P.2d 1193, 1195 (Wyo.1992); *Perry v. State,* 303 Ark. 100, 102, 794 S.W.2d 141 (1990); *People v. Hamilton,* 666 P.2d 152, 154 (Colo.1983); 3 LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* Section 5.1(b) at 18–19 (5th Ed.2012); 4 Bergman & Duncan, *Wharton's Criminal Procedure,* Section 23:23, at 23–79 to 23–80 (14th Ed.2010).

#### *Statutory Law*

{¶ 13} The General Assembly codified this common law rule in Ohio as early as 1837, when it enacted an act "[d]efining the powers and duties of Justices of the Peace and Constables, in Criminal Cases," 35 Ohio Laws 87, 91, which authorized constables to apprehend felons and disturbers of the peace without a warrant "within their respective counties." And in 1869, when the General Assembly enacted R.S. 7129, 66 Ohio Laws 287, 291, as part of the act establishing the Ohio Code of Criminal Procedure, it retained the common law rule limiting an officer's authority to make a warrantless arrest to the geographical boundaries of the political subdivision employing the officer. *Cincinnati v. Alexander,* 54 Ohio St.2d 248, 252, 375 N.E.2d 1241 (1978) ("the General Assembly intended no devolution of arrest power outside the respective political subdivisions relating to the enumerated officers in the enactment of [R.S. 7129]").

{¶ 14} The General Assembly subsequently recodified R.S. 7129, and the current version, R.C. 2935.03(A)(1), now provides:

A sheriff, deputy sheriff, marshal, deputy marshal, municipal police officer, township constable, [or] police officer of a township or joint police district * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision * * * in which the peace officer is appointed, employed, or elected, a law of this state, an ordinance of a municipal corporation, or a resolution of a township.

{¶ 15} However, the General Assembly has not extended the authority to enforce traffic laws on state highways to all police officers. In that regard, R.C. 4513.39(A) provides:

The state highway patrol and sheriffs or their deputies shall exercise, to the exclusion of all other peace officers except within municipal corporations and except as specified in division (B) of this section and division (E) of section 2935.03 of the Revised Code, the power to make arrests for violations on all state highways, of sections 4503.11, 4503.21, 4511.14 to 4511.16, 4511.20 to 4511.23, 4511.26 to 4511.40, 4511.42 to 4511.48, 4511.58, 4511.59, 4511.62 to 4511.71, 4513.03 to 4513.13, 4513.15 to 4513.22, 4513.24 to 4513.34, 4549.01, 4549.08 to 4549.12, and 4549.62 of the Revised Code.

The enumerated Revised Code sections in this statute include the marked lane violation at issue in this case as well as speed limits and the use of turn signals, headlights, and brake lights.

{¶ 16} R.C. 4513.39(B), on the other hand, grants authority to certain township police officers to enforce traffic laws on state highways, stating:

A member of the police force of a township police district created under section 505.48 of the Revised Code or of a joint police district created under section 505.482 of the Revised Code, and a township constable appointed pursuant to section 509.01 of the Revised Code, who has received a certificate from the Ohio peace officer training commission under section 109.75 of the Revised Code, shall exercise the power to make arrests for violations of those sections listed in division (A) of this section, other than sections 4513.33 and 4513.34 of the Revised Code, as follows:

(1) If the population of the township that created the township or joint police district served by the member's police force or the township that is served by the township constable is fifty thousand or less, the member or

constable shall exercise that power on those portions of all state highways, except those highways included as part of the interstate system, as defined in section 5516.01 of the Revised Code, that are located within the township or joint police district, in the case of a member of a township or joint police district police force, or within the unincorporated territory of the township, in the case of a township constable;

(2) If the population of the township that created the township or joint police district served by the member's police force or the township that is served by the township constable is greater than fifty thousand, the member or constable shall exercise that power on those portions of all state highways and highways included as part of the interstate highway system, as defined in section 5516.01 of the Revised Code, that are located within the township or joint police district, in the case of a member of a township or joint police district police force, or within the unincorporated territory of the township, in the case of a township constable.

{¶ 17} This statute thus precludes township police officers who are not commissioned peace officers from enforcing these traffic laws on any state highway, and commissioned peace officers serving a township with a population of 50,000 or less may not enforce these traffic laws on state highways included in the interstate highway system. And, as we explained in *State v. Holbert,* 38 Ohio St.2d 113, 116, 311 N.E.2d 22 (1974), because the statute precludes township officers from enforcing the listed traffic laws, those officers cannot stop a motorist or make an arrest alleging such a violation.

{¶ 18} We have previously held that an arrest made in violation of a statute limiting the police officer's authority to make the arrest infringes on "[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures" as guaranteed by Article I, Section 14 of the Ohio Constitution.

{¶ 19} In *State v. Brown,* 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, officers arrested Dali Jacques Brown, a suspected drug dealer, for jaywalking, a minor misdemeanor, and a search incident to the arrest revealed that Brown had crack cocaine. *Id.* at ¶ 1–3. The state indicted him for possession of a controlled substance. The trial court, however, suppressed the drug evidence because the officers lacked statutory authority to make an arrest for a minor misdemeanor pursuant to R.C. 2935.26, and therefore the search incident to the arrest was unreasonable for purposes of Article I, Section 14 of the Ohio Constitution. *Id.* at ¶ 3.

{¶ 20} The court of appeals affirmed the suppression of the evidence, and we accepted the state's discretionary appeal to consider "whether an arrest for a

minor misdemeanor violates the Fourth Amendment of the United States Constitution and Section 14, Article I of the Ohio Constitution" in light of the United States Supreme Court's decision in *Atwater v. Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). *Id.* at ¶ 5–7. *Atwater* had held that the Fourth Amendment does not forbid a warrantless arrest for a minor criminal offense, such as a minor misdemeanor seat belt violation punishable only by a fine.

{¶ 21} We recognized that the warrantless arrest for a minor misdemeanor did not violate the Fourth Amendment, *Brown* at ¶ 20–21, but we determined that "Section 14, Article I of the Ohio Constitution provides greater protection than the Fourth Amendment to the United States Constitution against warrantless arrests for minor misdemeanors," *id.* at ¶ 22. In reaching that conclusion, we reaffirmed the application of the balancing test set forth in *State v. Jones,* 88 Ohio St.3d 430, 727 N.E.2d 886 (2000), to ascertain whether a search or seizure is reasonable by weighing the competing interests involved and considering the extent of the officer's intrusion on an individual's liberty and privacy against the need to promote legitimate governmental interests. *Brown* at ¶ 17–19, 22; *Jones* at 437.

{¶ 22} We concluded that "Brown was arrested for a minor misdemeanor offense when none of the R.C. 2935.26 exceptions were applicable, and thus, the arrest violated Section 14, Article I of the Ohio Constitution." *Brown,* 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, at ¶ 25. Accordingly, we upheld the suppression of the evidence discovered. *Id.*

{¶ 23} Article I, Section 14 of the Ohio Constitution affords greater protection than the Fourth Amendment against searches and seizures conducted by members of law enforcement who lack authority to make an arrest. Therefore, a traffic stop for a minor misdemeanor offense made by a township police officer without statutory authority to do so violates Article I, Section 14 of the Ohio Constitution.

{¶ 24} The state's reliance on *State v. Jones,* 121 Ohio St.3d 103, 2009-Ohio-316, 902 N.E.2d 464 (*"Jones II"*), is misplaced. *Jones II* holds that a traffic stop made outside the officer's statutory jurisdiction but founded on probable cause is not per se unreasonable for purposes of the Fourth Amendment. However, as we explained in *Brown,* decisions interpreting the United States Constitution do not control the analysis here, because " '[t]he Ohio Constitution is a document of independent force,' " *Brown* at ¶ 21, quoting *Arnold v. Cleveland,* 67 Ohio St.3d 35, 616 N.E.2d 163 (1993), paragraph one of the syllabus, and "it is our charge to determine and not to disturb the clear protections provided by the drafters of our Constitution," *Arnold* at 43.

{¶ 25} In this case, the state admits that Officer Clark violated R.C. 4513.39 by stopping Brown for a marked lane violation on Interstate 280. Thus, Clark acted

outside her authority and exercised law-enforcement powers not expressly granted to a township officer by the General Assembly. The government's interests in permitting an officer without statutory jurisdiction or authority to make a traffic stop for a minor misdemeanor offense in these circumstances is minimal and is outweighed by the intrusion upon the individual's liberty and privacy that necessarily arises out of the stop. Accordingly, the traffic stop and the ensuing search and arrest in this case were unreasonable and violated Article I, Section 14 of the Ohio Constitution, and the evidence seized as a result should have been suppressed.

## Conclusion

{¶ 26} A traffic stop for a minor misdemeanor made outside a police officer's statutory jurisdiction or authority violates the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution. Here, the appellate court correctly determined that the township police officer lacked authority to enforce a marked lane violation on an interstate highway and that the traffic stop and ensuing search of the vehicle were unreasonable, and it properly ordered suppression of the evidence obtained from that search.

{¶ 27} For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and PFEIFER, LANZINGER, and O'NEILL, JJ., concur.

KENNEDY and FRENCH, JJ., dissent.

———————

**FRENCH, J., dissenting.**

{¶ 28} For the second time in recent months, a majority of this court has elected to create a new state constitutional right in the absence of " 'compelling reasons why Ohio constitutional law should differ from the federal law.' " *See State v. Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, —— N.E.3d ——, ¶ 33 (French, J., dissenting), quoting *State v. Wogenstahl*, 75 Ohio St.3d 344, 363, 662 N.E.2d 311 (1996). And, more troublingly, it has done so without carefully examining the language of the Ohio Constitution to justify its departure from federal law.

{¶ 29} In light of the nearly identical text of Article I, Section 14 of the Ohio Constitution and the Fourth Amendment to the United States Constitution, coupled with the Ohio framers' reliance on the preexisting Fourth Amendment in drafting Ohio's constitutional search-and-seizure provision, I discern no compel-

ling basis for affording Article I, Section 14 of the Ohio Constitution broader reach than the Fourth Amendment.

{¶ 30} The exclusionary rule applies only to evidence obtained in violation of a constitutional right. *Kettering v. Hollen,* 64 Ohio St.2d 232, 234–235, 416 N.E.2d 598 (1980). Therefore, this case asks whether a traffic stop based upon probable cause but contrary to a state statute that limits a township police officer's authority to stop a motorist for certain traffic violations on an interstate highway rises to the level of a constitutional violation. This court has previously held that a traffic stop outside an officer's statutory jurisdiction but founded upon probable cause is not unreasonable under the Fourth Amendment. *State v. Jones,* 121 Ohio St.3d 103, 2009-Ohio-316, 902 N.E.2d 464 (*"Jones II"*). Yet the majority here concludes that Article I, Section 14 of the Ohio Constitution provides greater protection and requires exclusion of the evidence. Majority opinion at ¶ 26. I conclude, however, that the traffic stop at issue here—a stop that undisputedly did not violate the Fourth Amendment because it was based upon probable cause—similarly did not violate Article I, Section 14 of the Ohio Constitution so as to require exclusion of the evidence.

{¶ 31} This court has repeatedly recognized that the language in Article I, Section 14 of the Ohio Constitution is nearly identical to the language of the Fourth Amendment. *See, e.g., State v. Jones,* 88 Ohio St.3d 430, 434, 727 N.E.2d 886 (2000) (*"Jones"*). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 14 of the Ohio Constitution differs from the Fourth Amendment in only minimal, nonsubstantive ways. In addition to minor changes in punctuation, it substitutes the word "possessions" for "effects," removes the capitalization from "Warrants" and "Oath," changes the plural "Warrants" to the singular "warrant," and substitutes "and" for "or" in the final clause.

{¶ 32} When Article I, Section 14 of the Ohio Constitution was adopted in 1851, the Fourth Amendment had been in effect for about 60 years. At that time, however, the Fourth Amendment did not apply to the states. *See State v. Lindway,* 131 Ohio St. 166, 2 N.E.2d 490 (1936), paragraph one of the syllabus ("The Fourth * * * Amendment[ ] to the Constitution of the United States, prohibiting unreasonable searches and seizures * * *, [is] directed exclusively against the activities of the federal government and [has] no application to the

various states and their agencies"). It was not until 1949 that the United States Supreme Court held that the principle at the core of the Fourth Amendment—security against arbitrary police intrusion—is enforceable against the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Wolf v. Colorado*, 338 U.S. 25, 27–28, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), *overruled on other grounds, Mapp v. Ohio*, 367 U.S. 643, 645–655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

{¶ 33} We presume that a body that enacts a constitutional amendment is aware of relevant and existing constitutional provisions. *State v. Carswell*, 114 Ohio St.3d 210, 2007-Ohio-3723, 871 N.E.2d 547, ¶ 6. Accordingly, we presume that the drafters of Article I, Section 14 of the 1851 Ohio Constitution were cognizant of the protections afforded by the Fourth Amendment, especially given the decision to incorporate nearly identical language into the Ohio Constitution. But not only did the framers of Article I, Section 14 track the language of the Fourth Amendment, they also departed from the search-and-seizure provision of the 1802 Ohio Constitution, which prohibited any search or seizure without a warrant. Ohio Constitution of 1802, Article VIII, Section 5. The framers of Article I, Section 14 of the Ohio Constitution intentionally brought the text of Ohio's provision regarding searches and seizures by state actors in line with the text of the Fourth Amendment, which governed searches and seizures by the federal government. There is simply no indication that the framers intended Article I, Section 14 of the Ohio Constitution to provide greater protections against state action than the Fourth Amendment provides against federal action. Nor does the majority in this case suggest otherwise.

{¶ 34} To be sure, the Ohio Constitution may provide greater protection of individual rights and civil liberties than the United States Constitution. *State v. Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, ¶ 21, citing *Arnold v. Cleveland*, 67 Ohio St.3d 35, 616 N.E.2d 163, paragraph one of the syllabus; *see also California v. Greenwood*, 486 U.S. 35, 43, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) ("Individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution"). But "we have sworn not to create new, Ohio-specific constitutional doctrines absent 'compelling reasons why Ohio constitutional law should differ from the federal law.'" *Bode*, 144 Ohio St.3d 155, 2015-Ohio-1519, —— N.E.3d ——, at ¶ 33 (French, J., dissenting), quoting *Wogenstahl*, 75 Ohio St.3d at 363, 662 N.E.2d 311. This case does not present those compelling reasons.

{¶ 35} Rather than looking to the text of the Ohio Constitution, the majority today relies almost exclusively on this court's opinion in *Brown* to hold that Article I, Section 14 of the Ohio Constitution affords greater protection than the Fourth Amendment against searches and seizures conducted by a law-enforce-

ment officer who lacks statutory authority to arrest. Majority opinion at ¶ 19. In *Brown*, a custodial search following an arrest for a minor-misdemeanor jaywalking offense uncovered crack cocaine. This court held that Article I, Section 14 of the Ohio Constitution "provides greater protection than the Fourth Amendment * * * against warrantless arrests for minor misdemeanors" and required suppression of the crack cocaine. *Brown* at syllabus. But reading *Brown* in the broader context of this court's search-and-seizure jurisprudence and in light of a more recent opinion involving facts substantially similar to this case reveals that *Brown* is an outlier and offers no compelling reason for reading Article I, Section 14 of the Ohio Constitution differently than we read the Fourth Amendment.

{¶ 36} Three years earlier, this court addressed the issue presented in *Brown* and held that the protections provided by Article I, Section 14 of the Ohio Constitution "are coextensive" with those provided by the Fourth Amendment. *Jones*, 88 Ohio St.3d at 434, 727 N.E.2d 886, citing *State v. Robinette*, 80 Ohio St.3d 234, 238, 685 N.E.2d 762 (1997). There, we engaged in a single analysis applicable to both the Ohio and the United States Constitutions, in which we balanced the extent of the intrusion on the individual's liberty and privacy against the need for the intrusion to promote legitimate governmental goals. *Id.* at 437, citing *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652–653, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995), and *Wyoming v. Houghton*, 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). Looking exclusively to federal caselaw, we concluded that the serious intrusion upon a person's liberty and privacy outweighed the minimal governmental interest in a full custodial arrest for a minor misdemeanor. *Id.* at 437–440. Accordingly, we held that absent a statutory exception allowing arrest, a full custodial arrest for a minor misdemeanor violates the Fourth Amendment and Article I, Section 14 of the Ohio Constitution. *Id.* at 440.

{¶ 37} We revisited that issue in *Brown*, 99 Ohio St.3d 323, 2003-Ohio-3931, 792 N.E.2d 175, to address the effect of the United States Supreme Court's intervening decision in *Atwater v. Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001), which held, "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater* involved an alleged Fourth Amendment violation as a result of an arrest for a minor misdemeanor, which Texas statutory law made punishable only by a fine. The Supreme Court rejected the application of a balancing test like the one we applied in *Jones*: "we confirm today what our prior cases have intimated: the standard of probable cause 'applie[s] to all arrests, without the need to "balance" the interests and circumstances involved in particular situations.'" (Brackets sic.) *Id.* at 354, quoting *Dunaway v. New York*, 442 U.S. 200, 208, 99 S.Ct. 2248,

60 L.Ed.2d 824 (1979); *see also Virginia v. Moore*, 553 U.S. 164, 171, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) ("In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable").

{¶ 38} In light of *Atwater*, we acknowledged that *Jones* "is no longer authoritative regarding warrantless arrests for minor misdemeanors" under the Fourth Amendment. *Brown* at ¶ 21. Nevertheless, despite our previous treatment of Article I, Section 14 of the Ohio Constitution and the Fourth Amendment as coextensive, the *Brown* majority changed course and found that "the balancing test set forth in *Jones* provides ample reason" for holding that Article I, Section 14 of the Ohio Constitution provides greater protection than the Fourth Amendment. *Id.* at ¶ 22. But the balancing test rejected for purposes of the Fourth Amendment in *Atwater* does not justify distinguishing Article I, Section 14 of the Ohio Constitution. The balancing of interests would be the same under either of those nearly identical provisions, and the *Brown* majority offered no justification for applying that test under Article I, Section 14 of the Ohio Constitution when the United States Supreme Court has rejected its application under the Fourth Amendment.

{¶ 39} Subsequent to *Brown*, we addressed an extraterritorial traffic stop in *Jones II*, 121 Ohio St.3d 103, 2009-Ohio-316, 902 N.E.2d 464, and held, "A law-enforcement officer who personally observes a traffic violation while outside the officer's statutory territorial jurisdiction has probable cause to make a traffic stop; the stop is not unreasonable under the Fourth Amendment * * *." *Id.* at syllabus. We held that *Moore*, 553 U.S. at 171, 128 S.Ct. 1598, 170 L.Ed.2d 559, "removed any room for finding that a violation of * * * R.C. 2935.03 [which governs a police officer's territorial jurisdiction], in and of itself, could give rise to a Fourth Amendment violation and result in the suppression of evidence." *Jones II* at ¶ 15. *Moore* clarified that the existence of probable cause ensures the constitutional reasonableness of a search or seizure and renders superfluous any weighing of the parties' interests. *Moore* at 171; *see also State v. Wilson*, 10th Dist. Franklin No. 13AP–205, 2013-Ohio-4799, 2013 WL 5874741, ¶ 11 ("the balancing test is not the proper analysis; instead, it must be determined whether probable cause existed"); *State v. Dillehay*, 3d Dist. Shelby No. 17–12–07, 2013-Ohio-327, 2013 WL 428651, ¶ 35 (stating that *Jones II* "explicitly rejects the application of a balancing test when remedying a violation of R.C. 2935.03").

{¶ 40} Although *Jones II* specifically addressed only the Fourth Amendment, and not Article I, Section 14 of the Ohio Constitution, the state's reliance on that case here is not "misplaced," as the majority states. Majority opinion at ¶ 24. In

*Jones II,* we held that observation of a traffic violation gave the officer probable cause to initiate a stop, which was constitutionally sound even though it was contrary to a state statute. *Id.* at ¶ 19, citing *Dayton v. Erickson,* 76 Ohio St.3d 3, 11–12, 665 N.E.2d 1091 (1996). We held that the officer's presence "outside his jurisdiction and * * * his reasons for being there [are] irrelevant" to the constitutional analysis because "the violation of R.C. 2935.03 does not rise to the level of a constitutional violation for the reasons expressed in *Moore.*" *Jones II* at ¶ 20. Nothing in *Jones II* suggests a reason for reaching a different result under the Ohio Constitution. Moreover, as we noted there, the remedy for a violation of R.C. 2935.03 "falls within the realm of the legislative branch." *Id.* at ¶ 23.

{¶ 41} The majority offers no compelling reason, other than blind reliance on *Brown,* for applying a balancing test to determine whether a stop based upon probable cause is reasonable under Article I, Section 14 of the Ohio Constitution when the existence of probable cause conclusively demonstrates the reasonableness of the stop under the Fourth Amendment. Absent compelling reasons to differ, this court should harmonize our interpretation of Article I, Section 14 of the Ohio Constitution with the Fourth Amendment and continue to treat those provisions as coextensive with respect to extraterritorial stops based upon probable cause. *See Robinette,* 80 Ohio St.3d at 239, 685 N.E.2d 762; *see also State v. Jordan,* 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 55 (refusing to extend *Brown* in the absence of "persuasive reasons for holding that the Ohio Constitution provides greater protection than the Fourth Amendment").

{¶ 42} Officer Clark had probable cause to stop Brown's vehicle after observing a traffic violation, and there is accordingly no need to balance the governmental interests against Brown's interests; the stop did not violate Brown's constitutional rights under either the Fourth Amendment or Article I, Section 14 of the Ohio Constitution, despite its violation of R.C. 4513.39. An extraterritorial stop for a traffic violation is reasonable and constitutionally sound, so long as it is based upon probable cause. *Jones II,* 121 Ohio St.3d 103, 2009-Ohio-316, 902 N.E.2d 464, at ¶ 19, fn. 4. Because I conclude that the stop in this case did not rise to the level of a constitutional violation under either the Fourth Amendment or Article I, Section 14 of the Ohio Constitution, I also conclude that the exclusionary rule does not apply. I would therefore reverse the judgment of the Sixth District Court of Appeals and reinstate Brown's conviction.

{¶ 43} For these reasons, I respectfully dissent.

KENNEDY, J., concurs in the foregoing opinion.

Paul A. Dobson, Wood County Prosecuting Attorney, and Thomas A. Matuszak and David T. Harold, Assistant Prosecuting Attorneys, for appellant.

Lawrence A. Gold, for appellee.

The Law Office of Robert L. Berry, L.L.C., and Robert L. Berry, urging reversal for amicus curiae Buckeye State Sheriffs Association.

Julia R. Bates, Lucas County Prosecuting Attorney, and Evy M. Jarrett, Assistant Prosecuting Attorney, urging reversal for amicus curiae Lucas County Prosecutor Julia R. Bates.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Andrew T. French, Assistant Prosecuting Attorney, urging reversal for amicus curiae Office of the Montgomery County Prosecuting Attorney.

Michael DeWine, Attorney General, and .Eric E. Murphy, State Solicitor, urging reversal for amicus curiae Ohio Attorney General Michael DeWine.

Ron O'Brien, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.

Carrie Wood, Assistant State Public Defender, urging affirmance for amicus curiae Office of the Ohio Public Defender.