[Cite as *Parma Hts. v. Brooks*, 2019-Ohio-2214.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

CITY OF PARMA HEIGHTS          :

    Plaintiff-Appellee,          :

                             No. 107163

    v.          :

CHRISTOPHER F. BROOKS,          :

    Defendant-Appellant.          :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 6, 2019

---

Criminal Appeal from the Parma Municipal Court
Case No. 17 TRD 16991

---

### *Appearances:*

Michael D. Pokorny, Parma Heights Director of Law, and
Mark A. Schneider, Parma Heights Prosecuting Attorney,
*for appellee.*

Christopher F. Brooks, *pro se.*

EILEEN A. GALLAGHER, J.:

{¶ 1} On the morning of November 30, 2017, a Parma Heights police officer observed pro se defendant-appellant Christopher Brooks fail to stop at a stop sign as required by R.C. 4511.43. Following a traffic stop, the officer issued Brooks a citation. The matter proceeded to a bench trial where the city called the officer to

testify. Brooks, the only other witness who testified, disputed the officer's account. The trial court found Brooks guilty and imposed a fine of $85 and ordered court costs be paid. Brooks now appeals, asserting five assignments of error:

1. The trial court erred by misinterpreting and/or misapplying R.C. 4511.43.

2. The trial court erred by disregarding the plain and common sense meaning of the notes contained on [sic] the Complete Traffic Citation issued on November 30, 2017 and by issuing the Final Order notwithstanding the evidence in the record that Appellant did, in fact, stop at the intersection of Pearl Road and Parma Park Boulevard.

3. The trial court erred by disregarding, and/or prohibited [sic] Appellant from introducing evidence of, or the cross-examination of the State's sole witness about, the improper issuance of the traffic citation on November 30, 2017 and the improper stop leading to the same.

4. The trial court erred in denying Appellant the ability to call witnesses.

5. The trial court erred by issuing the Final Order in contravention to [sic] the manifest weight of the evidence.

For the reasons that follow we affirm.

**Factual and Procedural Background**

{¶ 2} During his testimony at trial, the police officer provided his account of the incident. He explained that he was observing traffic from a bank parking lot at the intersection of Pearl Road and Parma Park Boulevard in Parma Heights, Ohio. Specifically, the officer was parked parallel with Pearl Road and facing Parma Park Boulevard. He explained that from this vantage point he had an unobstructed view of the stop sign on Parma Park Boulevard and could see back down Parma Park Boulevard the distance of approximately two car lengths from the stop sign.

{¶ 3} The officer testified "I was on patrol in that parking lot specifically to watch the stop sign at Parma Park Boulevard and Pearl Road. There is one vehicle which stopped at the stop sign, when that vehicle went through [Brooks] proceeded directly behind it, did not stop at the stop sign." While the officer admitted that from his vantage point he was not able to see the stop line painted on the roadway, he explained that stop lines are "usually immediately just before the stop sign," and further confirmed that Brooks' vehicle did not "stop at the stop sign where it's supposed to."

{¶ 4} During the officer's cross-examination, Brooks inquired as to notes that the officer recorded on the citation. Specifically, Brooks asked what the officer meant when he noted that Brooks "piggybacked" off of the car in front of him.

{¶ 5} The officer explained that term was a shorthand description of Brooks' observed behavior at the intersection:

> "[p]iggyback" is a term I use personally when I'm writing my notes. It means that when [vehicle number one] stops for a stop sign and there's traffic behind that vehicle, obviously they also have to stop * * * when the vehicle, vehicle number one goes through the stop sign the vehicles behind them follow it straight out.

The officer further explained, "[b]ecause I wrote the term 'piggybacking,' I'm going to say it was pretty much continuous that Mr. Brooks just continued to follow straight through the stop sign."

{¶ 6} Brooks testified on his own behalf and, during his narrative testimony, he stated that he stopped twice on Parma Park Boulevard as he approached the stop sign, which was consistent with the officer's testimony to that

point. Brooks' testimony, however, diverged from the officer's as he insisted that he stopped a third time before proceeding through the intersection. Brooks alternatively argued that R.C. 4511.43 only required him to stop once and that he satisfied this when he stopped on his approach to the intersection.

{¶ 7} The trial court asked Brooks clarifying questions about his account:

The Court: Okay, okay, just wait a minute. So the first two cars were already at the intersection, that's what you recall?

Brooks: Yes Your Honor.

The Court: You then come up on them, just to walk through, you then stop behind the two cars?

Brooks: Yes Your Honor.

The Court: Okay. Then the first car headed right or left or straight, don't matter, headed out, the car in front of you then stopped at some vicinity of a stop sign.

Brooks: Yes Your Honor.

The Court: You then stopped behind that car.

Brooks: Yes Your Honor.

The Court: Then the car in front of you now moves, right, left, center, don't matter, what did you then do?

Brooks: I stopped again and then I turned left.

The Court: Okay when you say you stopped again, once this car moved whether your automatic transmission or some form of gas pedal you moved forward?

Brooks: Yes Your Honor.

The Court: And you then stopped. Where, the best recollection that you can recall, where did you stop?

Brooks: It would have been beyond the crosswalk because quite frankly —

The Court: You say beyond the crosswalk you're saying because there is whether it's visible or not that which would have been a crosswalk, the front of your vehicle was somewhere in that crosswalk?

Brooks: Yes Your Honor.

{¶ 8} Brooks' first, second and fifth assignments of error are interrelated, and taken together amount to challenges to his conviction based on the sufficiency of the evidence and as being against the manifest weight of the evidence. We, therefore, address these assignments of error together.

**Sufficiency of the Evidence**

{¶ 9} Brooks argues that his conviction is based on insufficient evidence because the officer agreed that Brooks both stopped "somewhere along Parma Park" and because he did not collide with another vehicle. We disagree.

{¶ 10} A challenge to the sufficiency of the evidence requires this court to view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), at paragraph two of the syllabus.

{¶ 11} In relevant part, R.C. 4511.43 provides that

every driver of a vehicle * * * approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it.

{¶ 12} Here, the police officer testified that he had an unobstructed view of the stop sign and could see approximately two car lengths from the stop sign down Parma Park Boulevard. The officer testified that he observed Brooks fail to stop at the stop line and instead proceed directly through the intersection without stopping. This is sufficient evidence for conviction.

**Manifest Weight of the Evidence**

{¶ 13} Brooks next challenges his conviction as being against the manifest weight of the evidence in light of the officer's testimony and his own. We disagree.

{¶ 14} A manifest weight challenge attacks the credibility of the evidence presented and questions whether the prosecution met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26. In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. Reversal on manifest weight grounds is thus reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} As previously discussed, the officer consistently testified that Brooks failed to stop as required by R.C. 4511.43. The fact that the officer stated at one point in his testimony that Brooks "did not stop at the stop sign," but at another point agreed that Brooks "did not stop at the stop line" does not create an inconsistency.

Moreover, the fact that the officer agreed that Brooks stopped "somewhere along Parma Park," is similarly unproblematic. To the contrary, the officer's notation and explanation that Brooks "piggybacked" illustrates that his testimony was consistent. We find no issue with the officer testifying that he was not able to see the actual stop line painted in the road from his vantage point. He explained that a stop line is usually "immediately" before the stop sign, and moreover was clear that he had an unobstructed view and that Brooks proceeded through the intersection without stopping as required.

{¶ 16} Similarly, Brooks' self-serving testimony, namely that he appropriately stopped, does not create a conflict in the evidence. As discussed, Brooks' claim that "I stopped when there were two cars in front of me, I stopped when there was one car in front of me" is consistent with the officer's testimony and description that Brooks "piggybacked." While these two "stops," as Brooks noted, may have prevented him from colliding with the vehicle in front of him they are both irrelevant as to the statutory requirement that he stop (1) where there is a clearly marked stop line in the road, (2) prior to the crosswalk, if any, where there is no stop line or (3) prior to the intersection where there is neither a stop line nor a crosswalk. *See* R.C. 4511.43.

{¶ 17} Addressing the divergence between the officer's and Brooks' testimony, specifically, the officer's statement that Brooks did not stop as required and Brooks' claim that he made a "third stop," we note that Brooks testified that this was "beyond" the crosswalk. As to this point, were we to disregard the officer's

testimony and instead accept Brooks' self-serving testimony as true, Brooks nevertheless agreed that "the front of [his] vehicle was somewhere in that crosswalk," and not at the stop line or prior to the crosswalk as required by R.C. 4511.43. After review of the evidence, Brooks' conviction is not against the manifest weight of the evidence.

{¶ 18} Accordingly we overrule Brooks' first, second and fifth assignments of error.

**Evidence of Trespass**

{¶ 19} In his third assignment of error Brooks argues that the trial court erred by refusing to let him present evidence that the police officer was trespassing on the bank's property at the time he observed Brooks at the intersection. We disagree.

{¶ 20} As authority for his claim that he should have been able to present evidence as to his theory that the police officer was trespassing, Brooks cites *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, a case we find distinguishable. *Brown* involved a township police officer who exceeded her statutory authority by stopping a motorist for a marked lane violation on an interstate highway. *Id.* at ¶ 2-4. Here, there is no basis for us to conclude that the police officer exceeded his authority by conducting the traffic stop. Moreover, Brooks articulates no basis by which we can conclude that the police officer's observation of him breaking the law on a public street was improper. We therefore overrule Brooks' third assignment of error.

**Minor Children as Witnesses**

{¶ 21} In his fourth assignment of error Brooks argues that the trial court erred by determining that his three children, one 8 year old and two 6 year olds, were not competent to testify. We agree but find it harmless error.

{¶ 22} Evid.R. 601 governs the competency of witnesses and provides, in relevant part:

> Every person is competent to be a witness except: * * *

> Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.

Evid.R. 601(A).

{¶ 23} Thus, under Evid.R. 601(A), a child under ten years is not competent to testify if the child "appear[s] incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." *See also* R.C. 2317.01. If a witness is under ten, the proponent of that witness bears the burden of establishing certain indicia of competency. *State v. Cepec*, 149 Ohio St.3d 438, 2016-Ohio-8076, 75 N.E.3d 1185, ¶ 66, citing *State v. Clark*, 71 Ohio St.3d 466, 469, 1994-Ohio-43, 644 N.E.2d 331.

{¶ 24} The determination of whether a child is competent is made by the trial court following a voir dire examination of the child. *State v. Frazier*, 61 Ohio St.3d 247, 250-251, 574 N.E.2d 483 (1991). "It is the duty of the trial judge to conduct a voir dire examination of a child under ten years of age to determine the child's

competency to testify." *Id.*  In determining whether a young child is competent to testify, the trial court must consider the following factors:

> (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful.

*Id.* at 251.  Thus, it is "the responsibility of the trial judge * * * to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them." *Id.*  The determination of a child's competence to testify is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Williams*, 8th Dist. Cuyahoga No. 105590, 2018-Ohio-845, ¶ 11, citing *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 100.

{¶ 25} Here, the trial court performed a cursory examination of Brooks' three children and asked them if they knew why they were in the courtroom.  One child responded "[f]or my dad because he says he stopped at the stop sign because we think that is true."  The following exchange then occurred between the court and the children:

> The Court:  So after this happened has your Dad talked to you at all about the case and the Trial?
>
> Child 1:  He said that we're going to go — like you're going to go to school and then he said we're going to —
>
> The Court:  No, no, I'm talking about after the ticket.
>
> Child 1:  Oh.

The Court: Okay, that's all gone, this would be after it happened in November. No, don't look at him, you look at me, it's you and me talking now. Did he talk to you at all about it after that? * * * That's either yes or no.

Child 1: Not really.

The Court: Not really is not a yes or a no.

Child 1: I guess like no.

The Court: Well when you said not really, what did you mean? Did he talk to you about it?

Child 1: I think yes.

The Court: Okay. Do you remember what he — let me ask this, [Child 2 and 3], did Dad talk to you about the ticket after it happened?

Child 2: Yes.

Child 3: Yes.

The Court: And what did you talk about with Dad?

Child 2: Well he told us that I would have to go to Court.

The Court: All right he told you that. Did he talk to you at all about what happened and what to tell us?

Child 2: Yes he did.

The Court: Did he do the same with you [Child 1]?

Child 1: Um-hmm.

The court then determined that none of the children were competent to testify.

{¶ 26} Although we find that the trial court erred by conducting an insufficient voir dire examination of the children, such error was harmless. Further, Brooks failed to proffer the anticipated testimony of the children for the record.

Even assuming that the children testified consistently with Brooks, as one child indicated to the court he would, this testimony would have been merely duplicative of Brooks' own account. *See State v. O'Neal*, 87 Ohio St.3d 402, 411, 721 N.E.2d 73 (2000) (improper admission of hearsay testimony was harmless error because it was merely duplicative of other admissible testimony). Brooks has not shown how the outcome would have been any different had the children been permitted to testify. As previously discussed, the fact that Brooks admitted that he stopped "somewhere in that crosswalk" and not at the stop line or prior to the crosswalk is dispositive.

{¶ 27} Accordingly we overrule Brooks' fourth assignment of error.

{¶ 28} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the Parma Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

MARY EILEEN KILBANE, A.J., and
MICHELLE J. SHEEHAN, J., CONCUR