[Cite as *State v. Hull*, 2020-Ohio-2895.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2019-L-126** |
| FLOYD J. HULL, SR., | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2015 CR 000387.

Judgment: Affirmed.

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, Ohio 44077 (For Plaintiff-Appellee).

*G. Michael Goins,* 13609 Shaker Boulevard, Suite 3-A, Cleveland, Ohio 44120 (For Defendant-Appellant).


THOMAS R. WRIGHT, J.

{¶1} Appellant, Floyd J. Hull, Sr., appeals the trial court's decision denying his postconviction petition seeking to vacate his drug trafficking convictions after pleading guilty. We affirm.

{¶2} This is the second time this postconviction proceeding has been before us. In Hull's first appeal, we reversed and remanded finding res judicata did not bar Hull's postconviction claims. *State v. Hull,* 11th Dist. Lake No. 2018-L-050, 2019-Ohio-23. On

remand, the trial court's September 24, 2019 decision again finds that Hull is not entitled to a hearing and overrules his postconviction claims.

{¶3} Hull raises two assigned errors, which we address collectively:

{¶4} "The trial court abused its discretion in its assessment of the credibility of Hull's supporting affidavits attached to his petition for postconviction relief pursuant to O.R.C. 2953.21, thus violating Hull's constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Section 1 and 14 of the Ohio Constitution.

{¶5} "The trial court erred in denying Hull's postconviction relief petition where he presented sufficient evidence de hors the record to merit an evidentiary hearing."

{¶6} We review the denial of a postconviction petition for an abuse of discretion. *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 49. "[T]he trial court's gatekeeping function in the postconviction relief process is entitled to deference, including the court's decision regarding the sufficiency of the facts set forth by the petitioner and the credibility of the affidavits submitted." *Id.* at ¶ 52.

{¶7} "[A]n abuse of discretion is the trial court's 'failure to exercise sound, reasonable, and legal decision-making.' *State v. Beechler,* 2d Dist. No. 09-CA-54, 2010-Ohio-1900, 2010 WL 1731784, ¶ 62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough,

2

without more, to find error.' *Id.* at ¶ 67." *Ivancic v. Enos*, 11th Dist. Lake No. 2011-L-050, 2012-Ohio-3639, 978 N.E.2d 927, ¶ 70.

{¶8}   As stated, we reversed and remanded the trial court's determination that Hull's postconviction arguments are barred by res judicata.  Thus, we directed the trial court on remand to:

{¶9}   "determine whether the petition, the record, and the supporting evidentiary documents contain sufficient operative facts which, if true, would establish substantive grounds for relief consistent with the direction set forth in [*State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905].  And if it so finds, then a hearing is required under R.C. 2953.21(D). If, however, it does not find a hearing is warranted and dismisses the petition, then it must issue findings of fact and conclusion of law sufficient to enable meaningful appellate review. R.C. 2953.21(D); *Calhoun, supra,* at 291-292."  *Hull* at ¶ 38.

{¶10}  On remand, the trial court's September 24, 2019 judgment again overrules Hull's postconviction petition without an evidentiary hearing.  The court finds that the supporting affidavits lack credibility and that none of the affidavits, even if true, establishes that Hull is entitled to postconviction relief.

{¶11}  The petitioner bears the burden to show via affidavits, the record, and other supporting materials that sufficient operative facts exist which, if true, would establish substantive grounds for postconviction relief. R.C. 2953.21(D); *State v. Clark*, 11th Dist. Portage No. 96-P-0257, 1998 WL 386186, *4, citing *State v. Jackson*, 64 Ohio St.2d 107, 111, 413 N.E.2d 819 (1980).

3

**Ineffective assistance of counsel claims**

{¶12} In urging the trial court to vacate his convictions, Hull presents three ineffective assistance of trial counsel arguments in his February 10, 2017 postconviction petition. First, Hull contends he was coerced by his attorney into pleading guilty based on his attorney's poor advice that Hull's confession was not subject to suppression. Hull urges his confession was subject to suppression since Hull was induced into confessing based on the state's false promises of receiving a lighter sentence.

{¶13} Second, Hull asserts his trial counsel was deficient for failing to timely move to suppress Hull's confession and argues that had it been timely filed, suppression was warranted. This second argument is also based on Hull's claim that he was coerced into confessing based on false promises of leniency made by police.

{¶14} Finally, Hull claims his trial counsel was deficient because counsel failed to challenge the jurisdiction of the officer who stopped Hull. And had a challenge to the officer's jurisdiction been raised, Hull claims the stop and subsequent convictions would be void or voidable since they occurred outside the officer's jurisdiction.

{¶15} "In evaluating claims of ineffective assistance of counsel, a two-step process is used. 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial * * *.' *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two

4

of the syllabus." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 61.

{¶16} "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's performance was reasonable considering all the circumstances. * * * Judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* supra, at 688-689. "[D]ebatable strategic and tactical decisions will not form the basis of a claim for ineffective assistance of counsel, even if there had been a better strategy available. * * * In other words, errors of judgment regarding tactical matters do not substantiate a defendant's claim of ineffective assistance of counsel." *State v. Swick,* 11th Dist. Lake No. 97-L-254, 2001-Ohio-8831, 2001 Ohio App. LEXIS 5857, at *2, 5-6 (citations omitted).

{¶17} Thus, Hull must have first established that his trial attorney's performance was deficient, i.e., unreasonable considering all the circumstances, and second, that the deficiency was prejudicial, i.e., deprived him of a fair trial.

{¶18} Consistent with its remand directive, the trial court assesses each of Hull's six supporting affidavits, weighs the credibility, and explains why it finds each lacks credibility. The trial court likewise finds that none of the affidavits, even if true, establishes that Hull is entitled to the requested relief. Because we agree with the trial court's finding that even if true, Hull's supporting affidavits do not present sufficient facts establishing he is entitled to relief, we do not address its credibility determinations.

**Hull's first and second ineffective assistance of counsel claims**

{¶19} Again, Hull's first claim of ineffective assistance alleges that his attorney's advice was deficient based on the poor assessment of a motion to suppress his coerced

5

confession based on false promises of leniency made by police and second that counsel's untimely filing of this motion was also deficient.

{¶20} Hull, however, fails to show the state's promises were false or that the promises of leniency preceded his confession. Hull likewise fails to establish that his attorney's advice was unreasonable under the circumstances.

{¶21} As for the affidavit of Attorney Goins, Hull's postconviction attorney and one of his attorneys during the underlying proceedings, the trial court finds that even if true, Goins does not state in his affidavit that Hull was coerced or threatened to plead guilty by his attorneys. We agree. In fact, Goins' affidavit states that Hull's best option was to plead guilty in light of his confession, which was "too damaging to any type of defense * * *."

{¶22} Hull's affidavit likewise does not establish he was coerced to plead guilty but that his attorneys recommended the plea based on their assessment of the law and facts. Hull makes a conclusory statement that he was induced into making a full confession "in exchange for promises of leniency * * *." Further, Hull does not identify when or at what point during the trial court proceedings the prosecutor withdrew the promises of leniency.

{¶23} The change of plea hearing transcript further reflects the facts surrounding the state's alleged promise of leniency. The motion to suppress was filed after the trial court was notified that Hull was pleading guilty and a few days before trial was scheduled. And upon being asked about the motion, Hull's trial counsel, Ramsey, explains why the suppression motion was untimely stating it was because there was a mix up regarding

6

Hull's possible deal. Ramsey does not indicate that the state revoked the deal after it made false claims of leniency that prompted Hull's confession.

{¶24} "MR. RAMSEY: We knew the motion was late being filed. There [were] some other issues, negotiations and misunderstandings and miscommunications that went on with this case from the very outset. When my client was arrested, he did speak with the officer, * * * who arrested him. And some type of a, I don't want to say deal, but an arrangement was made where my client might offer some information to the officer, to the drug task force, where my client might be able to help himself. That information was relayed at a * * * preliminary hearing * * * to another counsel. Counsel who is present in court today, Mr. Goins. And Mr. Goins neglected to give that * * * contact information of the drug task force and my client, he neglected to hook them up.

{¶25} "So while this case was pending * * * my client was supposed to have been contacting someone from the drug [task] force. He never received that information due to a mistake that was not his fault.

{¶26} "So we all, throughout this process, we thought that my client would be able to help himself with some information. * * *

{¶27} "So while this was going on, we knew we had a possible suppression issue * * * but we did not file that motion because we thought my client would be able to help himself with some valuable information about some pretty serious drug traffickers * * *

{¶28} "The window was very narrow. The state was not interested in my client. Once we found out the mistake had been made, * * * the window was closed and we found ourselves in a time crunch * * *.

{¶29} "* * *

7

{¶30} "THE COURT: That [failure to relay the information to Hull] had nothing to do with the prosecutor; right?

{¶31} "MR. RAMSEY: No. That my client did not receive that information. No, Your Honor."

{¶32} Thereafter, and at the same change of plea hearing, the court addresses Hull and asks him if he is satisfied with the advice of counsel, and Hull responds "Yes, very much." The trial court also asks Hull whether he had been "threatened or coerced in any way to plead guilty" to which Hull responds no.

{¶33} After the court accepted Hull's guilty plea and dismissed the remaining charges, Attorney Ramsey asked the court if it would consider at sentencing any help that Hull offered authorities and restated that Hull's leniency deal fell through based on miscommunications:

{¶34} "like I told you, there [were] miscommunications that I talked about earlier. My client has set certain things in motion to help himself with what I was talking about earlier, * * * [w]ould that be something the Court might consider if [Hull] was able to lead law enforcement to some people who may be involved in drug trafficking?

{¶35} "* * *

{¶36} "THE COURT: Certainly. I mean I'm not promising anything."

{¶37} For the first time at the sentencing hearing, Ramsey also states that Hull's prior conviction for rape was the reason that the police and the prosecutors were not interested in using Hull as an informant.

{¶38} Attorney Goins also spoke on Hull's behalf at sentencing and explained that the police wanted Hull's help, which would have helped Hull, but the state later indicated

8

that they could not use Hull as an informant because of his "past rape issues." Finally, Hull, speaking at sentencing, also concedes that he was unable to work as a confidential informant based on his past crimes. None of Hull's postconviction petition affidavits mentions Hull's history of rape.

{¶39} Contrary to Hull's argument, he has not demonstrated he was coerced into pleading guilty based on his attorney's poor advice regarding the admissibility of his confession or via the state's false promises. Instead, the record and the affidavits show that Hull's promised leniency was a mere possibility that never came to fruition, evidently through no fault of the state.

{¶40} Moreover, nothing in the record or in Hull's supporting affidavits shows that the state's alleged promises of leniency preceded his confession or if Hull first confessed in an effort to secure some leniency. Hull's affidavit is conclusory in this regard and thus is of no consequence. Broad assertions and general conclusory allegations that a defendant was denied his rights are inadequate to require a postconviction evidentiary hearing. *State v. Jackson*, 64 Ohio St.2d 107, 111, 413 N.E.2d 819 (1980).

{¶41} As for the four remaining affidavits attached to Hull's motion, the trial court finds that none of these four aver that Hull was coerced to plead guilty, and none establishes that had a timely motion to suppress been filed, it would have been granted. We agree. Thus, even if deemed credible and true, the four remaining affidavits are inconsequential.

{¶42} Contrary to Hull's claims, he fails to establish the factual predicate for his first and second claims of ineffective assistance of counsel, i.e. that his attorney's advice was deficient or unreasonable given the circumstances. Even assuming counsel was

9

deficient in their advice and by failing to timely move to suppress Hull's confession, Hull fails to establish any resulting prejudice. And as stated, there is nothing showing the state's promises of leniency preceded Hull's confession. Thus, the trial court was not required to conduct a hearing on these claims.

**Hull's third ineffective assistance of counsel claim**

{¶43} Hull's third ineffective assistance of counsel claim contends his trial counsel was deficient for failing to challenge the arresting officer's jurisdiction and had the issue been raised, the evidence would have shown that the officer exceeded his jurisdiction, that the stop was illegal, and thus his convictions were void or voidable.

{¶44} Hull makes a conclusory statement that the officer lacked authority to stop him in his affidavit since the officer was beyond his jurisdiction. Hull asserts that the Willoughby Hills police "lacked statutory authority to stop the defendant on (I-90 West), an interstate highway outside his territorial jurisdiction for a marked lane violation * * *."

{¶45} In the case he cites in support, *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, the Ohio Supreme Court affirms an appellate court's decision "that the township police officer lacked authority to enforce a marked lane violation on an interstate highway and that the traffic stop and ensuing search of the vehicle were unreasonable." Thus, suppression of the evidence obtained from that search was warranted. *Id. Brown* held in part:

{¶46} "This statute [R.C. 4513.39] thus precludes township police officers who are not commissioned peace officers from enforcing these traffic laws on any state highway, and commissioned peace officers serving a township with a population of 50,000 or less may not enforce these traffic laws on state highways included in the interstate highway

10

system. And * * * because the statute precludes township officers from enforcing the listed traffic laws, those officers cannot stop a motorist or make an arrest alleging such a violation." *Id.* at ¶ 17. And "an arrest made in violation of a statute limiting the police officer's authority to make the arrest infringes on '[t]he right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures' as guaranteed by Article I, Section 14 of the Ohio Constitution" and is therefore subject to suppression. *Id.* at ¶ 18.

{¶47} In *Brown*, however, the state admitted that the officer violated the statute by stopping him for a marked lane violation on the interstate. Thus, the Supreme Court agreed that the stop was a violation of the Ohio Constitution and should have been suppressed as a violation of the guarantee against unreasonable searches and seizures. *Id.* at ¶ 26. Hull does not address or acknowledge the exceptions to the exclusionary rule in *Brown*.

{¶48} The factual allegations in Hull's brief are not included in his supporting affidavits. None of the affidavits provide details surrounding his stop sufficient to establish his argument, and none establishes that the arresting officer stopped Hull outside of the officer's jurisdiction, beyond his authority, or in violation of a statute. Thus, even if deemed credible and true, the supporting affidavits are inconsequential.

{¶49} Moreover, Hull leaves this court guessing how *Brown* applies here. His conclusory reliance on this case raises more questions than answers as he was not stopped by a township police officer; he was stopped by a city of Willoughby Hills officer. Hull's reliance on *Brown* fails to detail with argument or analysis how this case applies, and thus this aspect of Hull's appeal fails to comply with App.R. 16(A)(7). *Byers DiPaola*

11

*Castle v. Ravenna City Planning Comm.*, 11th Dist. Portage No. 2010-P-0063, 2011-Ohio-6095, ¶ 35. It is not this court's function to flesh out an appellant's argument on appeal. *State v. Hall*, 8th Dist. Cuyahoga No. 90365, 2009-Ohio-461, ¶ 40; *TJX Cos., Inc. v. Hall*, 183 Ohio App.3d 236, 2009-Ohio-3372, 916 N.E.2d 862, ¶ 6 (8th Dist.).

{¶50} Finally, Hull agreed that the state's recitation of the facts that it would have presented at trial was accurate during the plea hearing, which included the statement that Hull knowingly transported a controlled substance in Lake County, Ohio, that was intended for sale.

{¶51} Based on the foregoing, Hull fails to show that his counsel was deficient for failing to file a motion to suppress challenging the jurisdiction of the officer who pulled him over or that Hull suffered prejudice as a result.

{¶52} Because Hull fails to establish the factual predicate for any of his three ineffective assistance of counsel claims, the trial court did not abuse its discretion in overruling Hull's postconviction petition without a hearing. R.C. 2953.21(D); *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980).

{¶53} Hull's first and second assigned errors lack merit, and the trial court's decision is affirmed.


MATT LYNCH, J.,

MARY JANE TRAPP, J.,

concur.