[Cite as *State v. Cruz*, 2023-Ohio-792.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| MANUELES CRUZ | : | Case Nos. 2022CA00055 |
| | : | 2022CA00056 |
| | : | |
| Defendant-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:            Appeal from the Canton Municipal
                                    Court, Case Nos. 2022CRB5454 &
                                    2022TRC6674



JUDGMENT:                           Reversed




DATE OF JUDGMENT:                   March 14, 2023




APPEARANCES:

For Plaintiff-Appellant                 For Defendant-Appellee

KEVIN R. L'HOMMEDIEU                     D. COLEMAN BOND
KRISTINA M. LOCKWOOD                     116 Cleveland Avenue NW
218 Cleveland Avenue SW                  Suite 600
Canton, OH  44702-1413                   Canton, OH  44702

*King, J.*

{¶ 1}   Appellant, the city of Canton, appeals the April 26, 2022 judgment of the Canton Municipal court which partially granted appellee's motion to suppress.

Facts and Procedural History

{¶ 2}   On November 2, 2021 around 11:00 p.m., Plain Township paramedics Daniel Ventura and Patrick Martinez were traveling on Middlebranch Road in their ambulance when appellee Cruz pulled in front of them in his Ford Escape. The paramedics observed Cruz as he drove 10 feet off the side of the road, overcorrected, and then drove over the double yellow line. Believing something was wrong with Cruz, Ventura called dispatch to send a deputy to their location. As the paramedics continued to follow Cruz, he pulled to the side of the road and stopped.

{¶ 3}   The paramedics pulled up alongside of Cruz and activated the overhead lights on the ambulance for safety reasons. Ventura asked Cruz if he was okay and noted Cruz spoke broken English. He also noted Cruz was slow to respond and slurring his words. He asked Cruz if he wanted a vitals check to make sure he was okay and if not, advised they could transport him to a hospital.

{¶ 4}   Cruz dropped his keys on the ground as he got out of his car. Ventura placed the keys on top of Cruz's car. Cruz got in the ambulance, but then changed his mind. When Stark County Sheriff's Deputy Jason Fisher arrived, Cruz was standing beside his car. Fisher could smell alcohol on Cruz and observed his eyes were bloodshot and glassy. Cruz performed poorly on field sobriety testing and based on his admission to driving, was cited for driving under the influence.

{¶ 5}   A subsequent search of Cruz's car produced multiple empty beer bottles and an open, partially full, and still cold bottle of beer.

Commented [A1]: This sounds like he voluntarily stopped. Is that inconsistent with what the trial court found?

{¶ 6}   Cruz filed a motion to suppress. He sought to suppress testimony from the paramedics regarding their observations of Cruz, opinions regarding Cruz's sobriety, any statements made by Cruz to police or any other law enforcement officer, and any testimony regarding Cruz's performance on field sobriety tests. Relevant to this appeal, Cruz argued the paramedics had no authority to conduct a traffic stop, nor the authority to ask Cruz to exit his vehicle and then take his keys. The city did not file a response.

{¶ 7}   Then a hearing was held on Cruz's motion. The parties stipulated the paramedics were state actors. At the conclusion of the hearing, the trial court granted Cruz's motion in part finding:

I don't see where policies, procedures, or the Constitution allows any state actor just to randomly make stops. * * * I don't think, despite what most of us believe, there's a statute on point that [sic] who may make an arrest, although we know that an officer must be in uniform in a clearly marked vehicle. But the remedy isn't there in statute when an un-uniformed officer or detective – although I'm familiar with the local case, not out of this Court, but not far, that holds anyone making an arrest without authority, without being marked, a traffic stop, that aren't in a marked vehicle and in uniform are not competent to testify.

* * *

[T]he firefighters pulled him over. The only remedy I have is to suppress their testimony at trial, not the stop. I would withhold their testimony, say that they're not competent to testify because they were the ones engaging in the activity of the stop, purposely or non-purposely. I mean, the firefighter gets out and clearly says they [sic] thought we were cops. I got to take that face value. He thought we were

police, we don't know. But if he thinks they're police, it gives good ground to the fact that he stopped because he thought he was stopping for police. But then to me, it's only throwing the firefighter's testimony out, they – they're not competent to testify at trial.

{¶ 8}   Transcript of April 19, 2022 suppression hearing, 74-75, 77.

{¶ 9}   In its subsequent judgment entry, the trial court granted Cruz's motion in part, finding the paramedics were state actors who were not authorized to conduct a traffic stop because they were not in a marked police vehicle and uniform. The trial court therefore suppressed any observations made by the paramedics, but the court found Deputy Fisher still had probable cause to arrest based on his own observations after he arrived at the scene.

{¶ 10} The city filed an appeal and the matter is now before this court for consideration. The city raises one assignment of error as follows:

I

{¶ 11} "THE TRIAL COURT ERRED IN SUPPRESSING EVIDENCE THAT WAS NOT SECURED IN VIOLATION OF A CONSTITUTIONAL RIGHT."

{¶ 12} In its sole assignment of error, the city argues the trial court erred in partially granting Cruz's motion to suppress finding Ventura incompetent to testify because he was not in a marked police cruiser nor wearing the appropriate distinctive uniform in violation of R.C. 4549.14 and Evid.R. 601(B)(4). We agree.

{¶ 13} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of

fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside*, supra; *Dunlap*, supra. Once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside*, supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657(1996).

{¶ 14} The trial court did not cite any case law or statutes on the record or in its judgment entry. The city suggests that the principals referred to by the trial court are contained in R.C. 4549.13, R.C. 4549.14, and Evid.R. 601(B)(4). R.C. 4549.13 governs vehicles used by traffic officers. The section provides:

> Any motor vehicle used by a member of the state highway patrol or by any other peace officer, while said officer is on duty for the exclusive or main purpose of enforcing the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, shall be marked in some distinctive manner or color and shall be equipped with, but need not necessarily have in operation at all times, at least one flashing, oscillating, or rotating colored light mounted outside on top of the vehicle. The

superintendent of the state highway patrol shall specify what constitutes such a distinctive marking or color for the state highway patrol.

{¶ 15} R.C. 4549.14 states:

Any officer arresting, or participating or assisting in the arrest of, a person charged with violating the motor vehicle or traffic laws of this state, provided the offense is punishable as a misdemeanor, such officer being on duty exclusively or for the main purpose of enforcing such laws, is incompetent to testify as a witness in any prosecution against such arrested person if such officer at the time of the arrest was using a motor vehicle not marked in accordance with section 4549.13 of the Revised Code.

{¶ 16} Evid.R. 601(B)(4) states:

(B) Disqualification of Witness in General. A person is disqualified to testify as a witness when the court determines that the person is:

* * *

(4) An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not

using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute.

{¶ 17} First, we agree with the city – the forgoing code sections and evidence rule are inapplicable to the paramedics in this matter. They apply instead to law enforcement officers who are on duty exclusively or for the main purpose of enforcing motor vehicle or traffic laws. *State v. Huth*, 24 Ohio St.3d 114, 115, 493 N.E.2d 961 (1986). The paramedics were neither.

{¶ 18} We next turn to the Cruz's counter argument. Cruz argues the trial court did not find the paramedics incompetent to testify for lack of a marked cruiser and appropriate uniform, but rather because the paramedics were state actors who improperly conducted a traffic stop.

{¶ 19} During the suppression hearing, there was conflicting testimony as to whether Cruz pulled over on his own, or whether the paramedics caused Cruz to pull over. But the trial court specifically found the paramedics pulled Cruz over. T. 77. Although it is not clear from the record, it appears that the trial court found that the paramedics first turned on their lights and that Cruz pulled over in response to those lights. In the ordinary course of their duties, paramedics would not enforce the laws, perform traffic stops, or arrest individuals. Accordingly, the record does not demonstrate that a similarly situated reasonable person would believe he or she was not free to leave merely because a medic vehicle pulled up behind a stopped vehicle with its lights on. See *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶ 20} Thus, the current record supports finding, at best, that the seizure by the paramedics occurred at the point when Cruz refused medical treatment and was unable

to drive away. Thus, the trial court improperly suppressed the testimony of the paramedics as it relates to their pre-seizure observations and actions. Until the point that Cruz was seized under the Fourth Amendment, there is no constitutional basis for suppressing their testimony, even with the stipulation that they were state actors. And as discussed above, the other apparent authority for suppression is inapplicable here.

{¶ 21} On remand, the trial court should also consider whether community-caretaking/emergency-aid exception applies here.

{¶ 22} In *State v. Dunn*, 131 Ohio St.3d 325, 2012-Ohio-1008, 964 N.E.2d 1037 at syllabus, the Supreme Court of Ohio held:

> The community-caretaking/emergency-aid exception to the Fourth Amendment warrant requirement allows a law-enforcement officer with objectively reasonable grounds to believe that there is an immediate need for his or her assistance to protect life or prevent serious injury to effect a community-caretaking/emergency-aid stop.

{¶ 23} In further proceedings, the trial court can determine whether this exception should apply to any state actor or just law enforcement officers. Moreover, the facts developed by the parties on remand may give the trial court a clearer picture of whether the paramedics actions were objectively reasonable under these circumstances and thus whether it is appropriate to apply this doctrine here.

{¶ 24} The city's assignment of error is sustained. The judgment of the Canton Municipal Court is reversed, and this matter is remanded to the trial court for proceedings consistent with this opinion.

By King,  J.,

Delaney, J. concurs,

Gwin, P.J. dissents.

AJK/rw

*Gwin, P.J., dissenting*

{¶**25**}  I respectfully dissent from the majority's opinion finding that the seizure by the paramedics occurred at the point when Cruz refused medical treatment.

{¶**26**}  In the case at bar, the trial court found that the paramedics effectuated a traffic stop of Cruz. T. at 77. "An appellate court's role in reviewing a trial court's ruling on a motion to suppress is not to reevaluate the evidence or the credibility of the witnesses, *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981-982(1992), but to determine whether the trial court's application of the law to the facts, as the trial court found them to be, is appropriate." *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141, 1143-1144(1993).

{¶**27**}  The stop of a vehicle and the detention of its occupants by law enforcement, for whatever purpose and however brief the detention may be, constitutes a seizure for Fourth Amendment purposes.  *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), *citing United States v. Martinez-Fuerte*, 428 U.S. 543, 556-558, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976).

{¶**28**}  "Paramedics" are defined in R.C. 4765.01.  That definition does not include "law enforcement officer." "Law enforcement officer" is defined by Crim.R. 2 as follows,

> (J) "Law enforcement officer" means a sheriff, deputy sheriff, constable, municipal police officer, marshal, deputy marshal, or state highway patrolman, and also means any officer, agent, or employee of the state or any of its agencies, instrumentalities, or political subdivisions, upon whom, by statute, the authority to arrest violators is conferred, when the officer, agent, or employee is acting within the limits of statutory authority. The definition of "law enforcement officer" contained in this rule shall not be

construed to limit, modify, or expand any statutory definition, to the extent the statutory definition applies to matters not covered by the Rules of Criminal Procedure.

*See also*, R.C. 2901.01(A)(11). The authority to enforce traffic laws is conferred upon certain law enforcement officers by R.C. 4513.39 as follows,

(A) The state highway patrol and sheriffs or their deputies shall exercise, to the exclusion of all other peace officers, except within municipal corporations and except as specified in divisions (B) and (C) of this section and division (E) of section 2935.03 of the Revised Code, the power to make arrests for violations on all state highways, of sections 4503.11, 4503.21, 4511.14 to 4511.16, 4511.20 to 4511.23, 4511.26 to 4511.40, 4511.42 to 4511.48, 4511.58, 4511.59, 4511.62 to 4511.71, 4513.03 to 4513.13, 4513.15 to 4513.22, 4513.24 to 4513.34, 4549.01, 4549.08 to 4549.12, and 4549.62 of the Revised Code.

(B) A member of the police force of a township police district created under section 505.48 of the Revised Code or of a joint police district created under section 505.482 of the Revised Code, and a township constable appointed pursuant to section 509.01 of the Revised Code, who has received a certificate from the Ohio peace officer training commission under section 109.75 of the Revised Code, shall exercise the power to make arrests for violations of those sections listed in division (A) of this section, other than sections 4513.33 and 4513.34 of the Revised Code, as follows:

(1) Except as specified in division (C) of this section, if the population of the township that created the township or joint police district

served by the member's police force or the township that is served by the township constable is fifty thousand or less according to the most recent federal decennial census, the member or constable shall exercise that power on those portions of all state highways, including those highways that are part of the national highway system but that are not part of the interstate system, that are located within the township or joint police district, in the case of a member of a township or joint police district police force, or within the unincorporated territory of the township, in the case of a township constable.

(2) If the population of the township that created the township or joint police district served by the member's police force or the township that is served by the township constable is greater than fifty thousand according to the most recent federal decennial census, the member or constable shall exercise that power on those portions of all state highways, including any highway that is a part of the interstate highway system or otherwise a part of the national highway system, that are located within the township or joint police district, in the case of a member of a township or joint police district police force, or within the unincorporated territory of the township, in the case of a township constable.

*See also, State v. Brown,* 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, ¶16.

{¶31} Because paramedics have no authority to enforce the traffic laws, they would be considered private citizens. In the State of Ohio, a private citizen is generally prohibited from effectuating a citizen's arrest for a misdemeanor. *Jackson v. Gossard,* 48 Ohio App.3d 309, 310-311(3rd Dist. 1989); *State v. Ross,* 12th Dist.

Clinton No. CA 2005-08-015, 2006 WL 2042828, ¶19.  *See also,* R.C. 2935.04; R.C. 2935.041.

**{¶32}**  Accordingly, the paramedics had no lawful authority to stop Cruz.

**{¶33}**  In *City of Columbus v. Murchison*, the Court noted that the Ohio Supreme Court has recognized one of the purposes of limiting traffic stops to law enforcement officers in clearly marked vehicles is to protect the public,

> One of the safety concerns addressed by the General Assembly in enacting the statutes was the hazard to members of the public that inevitably would result should a police officer, not clearly identified as such, confront a driver and attempt to require him to follow the officer's instructions. It requires little imagination to contemplate the unfortunate consequences should a frightened motorist believe that he was being forced off the road by a stranger. The General Assembly sought to avoid such mischief by requiring police officers on traffic duty to be identified clearly.

21 Ohio App.3d 75, 76, 486 N.E.2d 236 (10th Dist. 1984), citing *Dayton v. Adams* 9 Ohio St.2d 89, 90, 223 N.E.2d 822 (1967).  To permit the paramedics to testify in spite of the fact that the statues do not give them authority to make traffic stops would be to encourage what the law forbids.  If any private citizen could stop another citizen without authority to do so yet, still be permitted to testify in court against the driver, citizens would have no incentive to follow the statutes drafted by the legislature concerning who has authority to initiate a traffic stop for traffic violations. Citizens will be at risk of being forced to pull over to the roadside at any time, day or night, for any reason, and by any person regardless of that person's intent.  R.C. 4549.14 and Evid. R. 601(B)(4) were clearly adopted to obviate this concern.

{¶34}  I would further find that the community caretaking/emergency-aid exception was not raised in the trial court or the briefs of the parties on appeal. In any event, to effectuate a traffic stop the exception only applies to law enforcement officers and not to private citizens.  *See, e.g., State v. Moiduddin,* 3rd Dist., Union No 14-18-15, 2019-Ohio-3544, ¶26 (community caretaking is an exception to the Fourth Amendments warrant requirement); *Commonwealth v. Livingstone,* 644 Pa. 27, 46, 174 A.2d 609(2017) (collecting cases).

{¶35}  Crim.R.12(J) provides that when the state seeks to appeal an adverse ruling on a motion to suppress, the prosecutor must certify that the ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed. Importantly, the rule further mandates as follows,

> If an appeal from an order suppressing or excluding evidence pursuant to this division results in an affirmance of the trial court, *the state shall be barred from prosecuting the defendant for the same offense or offenses* except upon a showing of newly discovered evidence that the state could not, with reasonable diligence, have discovered before filing of the notice of appeal.

{¶36}    I would therefore overrule the state's sole assignment of error and affirm the trial court's holding that all evidence concerning the stop of Cruz's vehicle and/or testimony from the firefighter/paramedics be excluded from trial.

**[Cite as *State v. Cruz*, 2023-Ohio-792.]**