[Cite as *State v. Thomas*, 2024-Ohio-1361.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellant,            :

                         No. 112624

v.                                      :

MAKEBA THOMAS,                          :

    Defendant-Appellee.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 11, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-674987-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Rachel Cohen, Assistant Prosecuting Attorney, *for appellant.*

Janet E. Burney, General Counsel — Deputy General Manager for Legal Affairs, and Brian R. Gutkoski, Associate Counsel II, *urging reversal for amicus curiae,* Greater Cleveland Regional Transit Authority.

Cullen Sweeney, Cuyahoga County Public Defender, and Robert McCaleb, Assistant Public Defender, *for appellee.*

MARY J. BOYLE, J.:

{¶ 1} At issue in this case is what authority, if any, did the legislature grant Greater Cleveland Regional Transit Authority ("GCRTA") police officers to effectuate a traffic stop on a public road for a minor misdemeanor traffic violation. The trial court found that the authority of a GCRTA officer is limited to "transit facilities" operated by the GCRTA as set forth in R.C. 306.35(Y). As a result, the court granted defendant-appellee, Makeba Thomas's ("Thomas"), motion to suppress any evidence obtained by the GCRTA police after a GCRTA officer arrested Thomas at her home, without a warrant, and nearly one month after other GCRTA officers attempted to stop Thomas for an alleged minor misdemeanor traffic violation on Euclid Avenue. Plaintiff-appellant, the state of Ohio ("state"), appeals this decision.[1] For the reasons set forth below, we affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} In November 2022, Thomas was charged in a four-count indictment arising from an alleged minor misdemeanor traffic violation observed by GCRTA Police Officer Brandon Smith ("Officer Smith") and GCRTA Police Officer Shawnshirae Brown-Kirby ("Officer Brown-Kirby"). Count 1 charged her with failure to comply, a third-degree felony. The charge alleges that Thomas willfully eluded or fled a police officer and contained a furthermore clause that Thomas caused a substantial risk of serious physical harm. Counts 2 and 3 charged her with

---

[1] We note that the GCRTA has filed an amicus curiae brief in support of the state.

endangering children, a first-degree misdemeanor. Count 4 charged Thomas with obstructing official business, a second-degree misdemeanor.

{¶ 3} Thomas filed a motion to suppress any evidence obtained by the GCRTA officers after they effectuated "an unlawful traffic stop." Thomas argued that (1) GCRTA officers have limited jurisdiction as set forth in R.C. 306.35(Y), which states that "[r]egional transit authority police officers shall have the power and duty to act as peace officers within transit facilities owned, operated, or leased by the transit authority"; (2) GCRTA does not have an agreement with the city of Cleveland ("city"), authorizing the GCRTA police to operate within the city, and therefore, GCRTA police lack jurisdiction outside of GCRTA facilities; (3) GCRTA officers lacked authority to stop Thomas on August 29, 2022; and (4) GCRTA officers lacked authority to arrest Thomas at her home on September 24, 2022. The state opposed, arguing GCRTA officers had authority under R.C. 306.35(Y) "to enforce all laws of the state and ordinances and regulations of political subdivisions in which the transit authority operates." The court held a hearing on the matter at which the following evidence was adduced.

{¶ 4} On August 29, 2022, Thomas was driving a car eastbound on Euclid Avenue near East 12th Street in Cleveland, Ohio. Thomas's two grandchildren were also in the car. Traffic was stopped at a red light at East 12th Street. At this intersection, Euclid Avenue has an eastbound lane with a left turn only lane next to it and a "bus only" lane next to that. Officer Smith testified that he was on patrol with Officer Brown-Kirby on the day in question. They were stopped at the light on

East 12th and Euclid. According to Officer Smith, "[w]e were behind about two cars at a red light, there was one or two cars behind us. We observed a vehicle, gray 2002 Dodge Neon, drive left of us into the bus lane, into the no-left-turn lane, and then ran the red light." (Tr. 34-35.) The officers then followed the Dodge Neon to East 14th Street, where both cars were stopped for a red light. At that point, the officers attempted to pull over the Neon by turning on the police lights. Officer Smith, who was riding as the passenger, exited the vehicle and approached the Neon. This interaction was captured on Officer Smith's body camera, which was played for the court. As Officer Smith approached the vehicle, the driver who was later identified as Thomas, asked him "what's the problem." Officer Smith replied, "[Y]ou're honking at everybody[.]" The light then turned green and Thomas said, "[G]uess what, gotta go." She then continued down Euclid Avenue with the officers pursuing after her. The officers had their lights and sirens activated.

{¶ 5} The officers continued to follow Thomas eastbound on Euclid Avenue for nearly 40 blocks. During this time, Thomas would stop at red lights and Officer Smith would call out to her, asking her to pull over and turn off her car. This continued until East 40th Street, when Officer Smith asked her again to stop her car. GCRTA Police Sergeant John Tekautz can then be observed pulling up in his police cruiser in the lane next to Thomas. Thomas can be heard yelling, "I know my rights, do you know yours?" Thomas then continued eastbound on Euclid Avenue with both GCRTA police cruisers following her. Thomas ultimately went left through a red light at East 55th Street. At which point, GCRTA police ended the pursuit.

{¶ 6} GCRTA Police Sergeant Christopher Anderson ("Sergeant Anderson") testified that on September 24, 2022, he was on Morton Avenue in Cleveland investigating an unrelated incident when he recognized the Dodge Neon from Officer Smith's bodycam video parked on the street. Sergeant Anderson testified that he exited his vehicle and began the process of towing the Dodge Neon due to it being involved in a felony. Sergeant Anderson was wearing his body camera at the time, and the interaction was played for the court. In the video, Thomas can be observed sitting on the rail of her front porch. Sergeant Anderson approached Thomas and confirmed Thomas's identity and that she was the owner of the Dodge Neon. Sergeant Anderson advised Thomas that she was a suspect in a fleeing and eluding case with the GCRTA police. Ultimately, Sergeant Anderson advised Thomas of her *Miranda* Rights and arrested her for fleeing and eluding on August 29th.

{¶ 7} After the conclusion of the hearing, the trial court issued a thorough judgment entry granting Thomas's motion to suppress. The court found that R.C. Section 306.35(Y) limits the jurisdiction of a GCRTA officer to "transit facilities" operated by the GCRTA and none of the exceptions to this limited jurisdiction apply. Moreover, the state acknowledged that GCRTA and the city do not have an agreement that permits GCRTA officers to exercise jurisdiction in Cleveland beyond transit facilities, and the court found that none of the activities undertaken by the GCRTA police officers were within transit facilities. The court further found the state's argument that Euclid Avenue from Public Square to University Circle is a

"transit facility" because GCRTA operates a bus line there with many stops and shelters unpersuasive. The court found that nothing in R.C. 306.30's definition of "transit facility" supports the state's interpretation.

{¶ 8} In addition, the court noted that in *State v. Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, the Ohio Supreme Court held that a traffic stop for a minor misdemeanor made outside a police officer's statutory jurisdiction or authority violates the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution. The court noted that running a red light and going left of center are minor misdemeanors under R.C. 4511.12 and 4511.29. Therefore, the court found the GCRTA officers were without authority to detain or arrest Thomas and concluded that

> [t]he evidence obtained by the GCRTA officers on August 29, 2022, will be suppressed at trial in accordance with the exclusionary rule, which exists to deter police from violating citizens' constitutional rights. In this case, that means any observations of the officers which came after they first took steps to carry out an extrajurisidictional traffic stop.

(Judgment Entry, 04/10/23.)

{¶ 9} It is from this order that the state appeals, raising a single assignment of error for review:

> **Assignment of Error:** The trial court erred when it granted [Thomas's] motion to suppress.

## II. Law and Analysis

{¶ 10} The state challenges the trial court's grant of Thomas's motion to suppress on three main grounds: (1) R.C. 306.35(Y) grants GCRTA officers police powers throughout all of Cuyahoga County, regardless of whether they are within a

transit facility or not; (2) an officer's exercise of arrest powers outside their jurisdiction is a statutory issue and not a constitutional one, and therefore, suppression is not the correct remedy; and (3) that the inevitable discovery and open view doctrines preclude the exclusion of any evidence.

## A. Motion to Suppress — Standard of Review

{¶ 11} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). Accepting these facts as true, we must then "independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997). "However, we review de novo the application of the law to these facts." *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100, citing *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶ 12} With regard to the validity of a traffic stop, this court has stated that

> at a hearing on a motion to suppress, the state bears the burden of establishing the validity of a traffic stop. *See State v. Foster*, Lake App. No. 2003-L-039, 2004 Ohio 1438, ¶6. Likewise, once a warrantless

search is established, it is the state's burden to show the validity of the search. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889.

*Lakewood v. Shelton*, 8th Dist. Cuyahoga No. 95746, 2011-Ohio-4408, ¶ 13.

### B. The Limited Authority of GCRTA Officers

{¶ 13} The state argues that under R.C. 306.35(Y), GCRTA's jurisdiction is the entirety of Cuyahoga County and GCRTA has authority to enforce all laws of the state and ordinances in which it operates. R.C. 306.35(Y) governs the powers and duties of a regional transit authority and provides in relevant part:

> Subject to any reservations, limitations, and qualifications that are set forth in those sections, the regional transit authority:
>
> * * *
>
> (Y) May provide for and maintain security operations, including a transit police department, subject to section 306.352 of the Revised Code. *Regional transit authority police officers shall have the power and duty to act as peace officers within transit facilities owned, operated, or leased by the transit authority* to protect the transit authority's property and the person and property of passengers, *to preserve the peace, and to enforce all laws of the state and ordinances and regulations of political subdivisions in which the transit authority operates.*

(Emphasis added.)

{¶ 14} The state bases its argument on the portion of the statute that reads "[r]egional transit authority police officers shall have the power and duty to act as peace officers * * *, to preserve the peace and enforce all laws of the state and ordinances and regulations of political subdivisions in which the transit authority operates." R.C. 306.35(Y). The state's focus is on the phrase "to enforce all laws * * * of political subdivisions in which the transit authority operates." R.C.

306.35(Y). The state argues that this phrase gives GCRTA officers full police powers throughout any jurisdiction in which a GCRTA transit facility is located, which would be the entirety of Cuyahoga County. In contrast, Thomas argues and trial court agreed that R.C. 306.35(Y) limits the authority of a GCRTA officer to "transit facilities" operated by the GCRTA.

{¶ 15} It is well-settled that when interpreting the meaning of a statute, "'[t]he paramount goal * * * is to ascertain and give effect to the legislature's intent in enacting the statute.'" *Antoon v. Cleveland Clinic Found.*, 148 Ohio St.3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 20, quoting *Brooks v. Ohio State Univ.*, 111 Ohio App.3d 342, 349, 676 N.E.2d 162 (10th Dist.1996). As the Ohio Supreme Court stated:

> To determine legislative intent, we must first examine the plain language of the statute. *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 1997-Ohio-310, 676 N.E.2d 519 (1997). "[W]e must apply a statute as it is written when its meaning is unambiguous and definite." *Portage Cty. Bd. of Comm'rs v. City of Akron*, 109 Ohio St.3d 106, 2006-Ohio-954, 846 N.E.2d 478, ¶ 52, citing *State ex rel. Savarese v. Buckeye Local School Dist. Bd. of Edn.*, 74 Ohio St.3d 543, 545, 1996-Ohio-291, 660 N.E.2d 463 (1996). "An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language * * *." *Burrows* at 81.

*Antoon* at ¶ 20. Indeed, "[w]hen there is no ambiguity, we must abide by the words employed by the General Assembly, *see State v. Waddell*, 71 Ohio St.3d 630, 631, 646 N.E.2d 821 (1995), and have no cause to apply the rules of statutory construction, *see Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 142 Ohio St.3d 236,

2014-Ohio-5511, 29 N.E.3d 903, ¶ 22-23." *State ex rel. Clay v. Cuyahoga Cty. Med. Examiners Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 15.

{¶ 16} After careful consideration of the statute, we find Thomas's position more persuasive and reject the state's interpretation of R.C. 306.35(Y). Contrary to the state's interpretation, R.C. 306.35(Y) does not give GCRTA police officers the authority to enforce all laws of the state and ordinances and regulations of political subdivisions in which the GCRTA operates. Rather, a plain reading of the statute provides that GCRTA officers are granted with the authority to act as peace officers *within transit facilities owned, operated, or leased by the GCRTA.* The legislature defined "transit facilities" to include any:

> Street railway, motor bus, tramline, subway, monorail, rapid transit, aeroplane, helicopter, ferry, or other ground or water transportation system having as its primary purpose the regularly scheduled mass movement of passengers between locations within the territorial boundaries of a regional transit authority, including all right-of-way, power lines, rolling stock, equipment, machinery, terminals, buildings, administration and maintenance and repair facilities, and supporting parking facilities, and franchise rights attendant thereto, but excluding therefrom trucks and facilities designed for use in the movement of property by truck[.]

R.C. 306.30(A).

{¶ 17} R.C. 306.35(Y) then provides that, *within the GCRTA facilities,* GCRTA officers are authorized to (1) protect the transit authority's property and the person and property of passengers; (2) preserve the peace; and (3) enforce all laws of the state and ordinances and regulations of political subdivisions in which the transit authority operates. To read the statute in any other way would lead to an

absurd result. Indeed, the legislature did not intend for GCRTA police officers to have full police powers throughout the entirety of Cuyahoga County. This would obviate the need for police officers in each individual municipality. Therefore, we find that R.C. 306.35(Y) is certain in meaning and is not susceptible to more than one reasonable interpretation. *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513, 668 N.E.2d 498 (1996). As a result, we apply the plain meaning of the statute as written, and we are not required to resort to any other means of interpretation.

{¶ 18} The plain meaning of the statute is further evidenced by the narrow exceptions set forth by the legislature to the "within transit facilities" limitation. First, R.C. 306.35(Y) provides that regional transit authority police officers shall have the power to act as peace officers when they render emergency assistance outside their jurisdiction to any other peace officer who is not a regional transit authority police officer and who has arrest authority under R.C. 2935.03. This exception was not raised at the trial court and is not at issue.

{¶ 19} Next, R.C. 306.35(CC) permits transit authority police employed under R.C. 306.35(Y) to exercise full arrest powers in municipalities located within the territorial jurisdiction of the regional transit authority only if the municipality and the regional transit authority have entered into an agreement to that effect. The state acknowledged at the suppression hearing that the GCRTA and the city do not have an agreement that permits GCRTA officers to exercise jurisdiction in Cleveland outside of transit facilities. (Tr. 7.) While the state acknowledges the lack of a

memorandum of understanding (MOU), the state argues that under *Cleveland Transit v. Maple Hts.*, 8th Dist. Cuyahoga No. 42982, 43117, and 43419, 1981 Ohio App. LEXIS 10489 (May 14, 1981), consent is not required. *Cleveland Transit*, however, is distinguishable.

{¶ 20} The issue in *Cleveland Transit* was whether the Greater Cleveland Transit Authority could render transit services in competition with city-owned transit lines without first obtaining consent from the municipalities, not the authority granted to act as peace officers as explicitly set forth in R.C. 306.35(Y). This court found that the regional transit authority may provide transit services in a municipality within its region without that municipality's consent. *Id*. at 12-15. In reaching this decision, we noted that R.C. Chapter 306 grants the transit authority county-wide jurisdiction to operate transit services. *Id*. at 11. As a result, the "authority is empowered to extend its transit lines into and through political subdivisions within said county." *Id*. at 12. Therefore, this exception is also not applicable to the instant case.

{¶ 21} Lastly, R.C. 2935.03 permits a transit authority officer to arrest a person outside of transit facilities only if the transit authority's officers initiate a pursuit within "transit facilities" and the pursuit takes place without unreasonable delay after an offense is committed. The offense involved must be either: (1) a felony; (2) a misdemeanor of the first degree or a substantially equivalent municipal ordinance; (3) a misdemeanor of the second degree or a substantially equivalent

municipal ordinance; or (4) any offense for which points are chargeable under R.C. 4510.036.

{¶ 22} At the suppression hearing, the state argued that all of Euclid Avenue from Public Square to University Circle is a "transit facility" because the GCRTA operates a bus line along that street with many stops. The trial court found, and we agree, that nothing in R.C. 306.30's definition of transit facility supports an interpretation that a transit facility also includes the entirety of any street where the authority operates a bus line. This is also true for Thomas's street, where there is no transit facility at all. Thus, none of the activities undertaken by GCRTA officers in this case were within transit facilities.

{¶ 23} We likewise find the state's reliance on *State v. Nesbit*, 8th Dist. Cuyahoga No. 107278, 2019-Ohio-1646, unconvincing. In *Nesbit*, two RTA officers observed the defendant run a red light in violation of R.C. 4511.13. After initiating the traffic stop, the officers smelled burnt marijuana. While attempting to issue the citation, the defendant became disorderly and refused to sign the citation. Subsequently, the defendant was removed from the car. The officers then began to search the vehicle for the source of the marijuana and found suspected narcotics. The defendant then attempted to flee the scene on foot. He was apprehended down the street, arrested, and the vehicle was towed. The defendant filed a motion to suppress, which the trial court denied after hearing; the defendant appealed based on the trial court's failure to suppress the evidence. *Id.* at ¶ 2-5, 7. The matter

proceeded to a jury trial, where defendant was found guilty of drug possession and obstructing official business. *Id.* at ¶ 11.

{¶ 24} On appeal, the defendant argued that the trial court erred in denying his motion to suppress because the RTA officers lacked reasonable suspicion and probable cause to stop his vehicle. We held that the RTA officers had a proper basis to conduct the investigative stop because they observed a traffic violation. *Id.* at ¶ 21. The officers then encountered the smell of burnt marijuana, which we found gave rise to a reasonable, articulable suspicion of criminal activity beyond the traffic violation for which the initial stop was prompted. *Id.* at ¶ 22. Thus, we found that the RTA officers had reasonable suspicion and probable cause to search defendant's vehicle. *Id.* at ¶26.

{¶ 25} The state argues under *Nesbit* that GCRTA officers are authorized to enforce traffic laws and conduct traffic stops throughout Cuyahoga County. In *Nesbit*, however, the defendant did not challenge the authority of the GCRTA officers to initiate the stop. Rather, the focus was on the legitimacy of the traffic stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Thus, *Nesbit* is inapposite.

{¶ 26} Accordingly, we find no basis to conclude that the legislature intended to grant GCRTA officers full police powers throughout the entirety of Cuyahoga County, which is where GCRTA transit facilities are located. To hold otherwise, would insert language into the statute that is not present. Rather, the legislature intended R.C. 306.35(Y) to limit the authority of a GCRTA officer to "transit

facilities" operated by the GCRTA. Our holding is consistent with the legislature's intention with other specialty police departments, i.e., R.C. 1713.50(C) grants campus police officers full police powers "only on the property of the private college or university that employs them"; R.C. 3735.31(D) grants housing authority police officers full police powers "in the housing projects"; and R.C. 1545.13(B) and 511.232(B) each grant park rangers of various types police powers "within and adjacent to the lands under the jurisdiction and control" of the board of park commissioners or pursuant to other provisions the revised code.

## C. Police Officer Jurisdiction

{¶ 27} The state further argues that when analyzing a Fourth Amendment argument for purposes of exclusion, the Fourth Amendment does not consider the jurisdiction of an officer. Rather, it considers whether the search was reasonable. Therefore, the state contends that even if the GCRTA officers were acting outside of their jurisdiction, the trial court could not have allowed such a singular factor to be outcome determinative in its suppression analysis. The state contends that, at a minimum, the trial court needed to consider whether the officers' conduct in conducting the stop was reasonable in light of the circumstances. Once a Fourth Amendment violation had occurred, then the court needed to engage in an analysis to determine whether the public costs to society in suppressing the evidence outweigh the need to deter the unlawful police conduct in the future.

{¶ 28} Thomas acknowledges that the state "is correct — up to a point." Thomas agrees that under federal constitutional law, a mere statutory violation does

not give rise to suppression. Thomas points out, however, that there is more than one constitution involved. Thomas, relying on *Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, argues that under the Ohio Constitution, evidence obtained as a result of a traffic stop outside of jurisdictional limits can be suppressed if there is a constitutional violation. We agree.

{¶ 29} In *Brown*, a township police officer stopped the defendant for a marked lane violation on an interstate highway. The traffic stop led to the discovery of 120 oxycodone tablets and a baggie of marijuana. The state charged the defendant with aggravated possession of drugs. The defendant filed a motion to suppress, but the trial court denied it, finding that the officer had probable cause to stop the defendant for a marked lane violation. The defendant appealed to the Sixth District Court of Appeals, contending that because the officer lacked statutory authority to stop him for a marked lane violation on an interstate highway, the stop and the subsequent arrest and search violated his right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution. *Id.* at ¶ 4-7.

{¶ 30} The appellate court determined that the stop did not violate the Fourth Amendment because the officer had probable cause to believe the defendant had committed a misdemeanor in her presence. The court found, however, that the stop was unreasonable and violated the Ohio Constitution because the marked lane violation occurred outside the officer's "territorial jurisdiction and there were no extenuating circumstances that called for the township police officer to initiate the

extraterritorial stop." *Id.* at ¶ 7. Concluding that the trial court should have suppressed the drug evidence, the appellate court reversed the defendant's conviction. *Id.*

{¶ 31} The Ohio Supreme Court accepted the state's discretionary appeal and considered "whether a traffic stop made without statutory jurisdiction or authority violates the protection against unreasonable searches and seizures afforded by Article I, Section 14 of the Ohio Constitution." *Id.* at ¶ 11. The *Brown* Court discussed the law on extraterritorial arrests and found that "Article I, Section 14 of the Ohio Constitution affords greater protection than the Fourth Amendment against searches and seizures conducted by members of law enforcement who lack authority to make an arrest." *Id.* at ¶ 23. In *Brown*, the state admitted that the officer violated R.C. 4513.39 by stopping the defendant for a marked lane violation on the interstate. Thus, the court concluded that the officer acted outside her authority and exercised law-enforcement powers not expressly granted to a township officer by the General Assembly. *Id.* The court stated:

> The government's interests in permitting an officer without statutory jurisdiction or authority to make a traffic stop for a minor misdemeanor offense in these circumstances is minimal and is outweighed by the intrusion upon the individual's liberty and privacy that necessarily arises out of the stop. Accordingly, the traffic stop and the ensuing search and arrest in this case were unreasonable and violated Article I, Section 14 of the Ohio Constitution, and the evidence seized as a result should have been suppressed.

*Id.* at ¶ 25.

{¶ 32} Applying *Brown* to the instant case, we likewise find that the GCRTA officers' attempted traffic stop and subsequent arrest of Thomas was made without statutory jurisdiction or authority. R.C. 306.35(Y) limits GCRTA officers' authority to act as peace officers within transit facilities owned, operated, or leased by the GCRTA. The GCRTA officers, however, attempted to stop Thomas for an alleged minor misdemeanor traffic violation on a public road and then arrested her at her home nearly a month after their encounter. Thus, the GCRTA officers acted outside their authority and exercised law-enforcement powers not expressly granted to them by the legislature. Accordingly, the attempted traffic stop and the subsequent arrest in this case were unreasonable, and violated Article I, Section 14 of the Ohio Constitution, and the evidence seized as a result should have been suppressed. The trial court's suppression was proper.

### D. Inevitable Discovery and Plain View

{¶ 33} The state further argues that the evidence of Thomas's "unhinged driving behavior" would be subject to the inevitable discovery exception to the exclusionary rule because the officers with purported jurisdiction would have followed up with the GCRTA officers who witnessed the crimes, reviewed the body camera footage, and conducted an investigation. Additionally, the state argues that the GCRTA officers' observation of Thomas running through a red light is also not subject to Fourth Amendment protection because the officers' observations on a public road were lawful and occurred without a search or seizure taking place.

{¶ 34} We note, however, that the inevitable discovery doctrine and open view doctrines are appropriately triggered only in those instances where the investigative procedures must have already been implemented prior to the discovery of the incriminating evidence through unconstitutional means, and the initial intrusion leading to the item's discovery was lawful and it was "immediately apparent" that the item was incriminating. *State v. Blevins*, 2016-Ohio-2937, 65 N.E.3d 146, ¶ 40 (8th Dist.), citing *State v. Masten*, 3d Dist. Hancock No. 5-88-7, 1989 Ohio App. LEXIS 3723, 20-21 (Sept. 29, 1989) ("circumstances justifying application of the rule are most likely to be present if investigative procedures were already in place prior to the discovery via the illegal means"); *State v. Waddy*, 63 Ohio St.3d 424, 442, 588 N.E.2d 819 (1992), citing *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). We find these doctrines inapplicable to the matter before us because the GCRTA officers were without authority to initiate the stop in the first instance.

{¶ 35} Therefore, the state's sole assignment of error is overruled.

## III. Conclusion

{¶ 36} We hold that R.C. 306.35(Y) is unambiguous. Applying the plain and ordinary meaning of the statute, GCRTA officers are granted the authority to act as peace officers within transit facilities owned, operated, or leased by the GCRTA. The plain language of R.C. 306.35(Y) does not support the interpretation proposed by the state. Furthermore, under *Brown*, 143 Ohio St.3d 444, 2015-Ohio-2438, 39 N.E.3d 496, ¶ 26, the GCRTA officers' attempted traffic stop on a public road for an

alleged minor misdemeanor and Thomas's subsequent arrest at her home nearly one month later was outside the GCRTA officers' statutory authority and violated the guarantee against unreasonable searches and seizures established by Article I, Section 14 of the Ohio Constitution. Therefore, the trial court properly suppressed any evidence obtained by the GCRTA police officers.

{¶ 37} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EILEEN T. GALLAGHER, P.J., CONCURS;
FRANK DANIEL CELEBREZZE, III, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

FRANK DANIEL CELEBREZZE, III, J., CONCURRING IN JUDGMENT ONLY:

{¶ 38} I reluctantly concur in the judgment of the panel because I am duty-bound to uphold the law and follow stare decisis. I write separately, however, to convey my dismay at the limitations this decision will place on the GCRTA officers and the increased danger to the public and police officers on the streets every day. I

know that the GCRTA officers carry this same concern as evidenced by the attendance of at least 20 officers in full uniform at the oral argument in this matter.

{¶ 39} In the past year, Cleveland was ranked one of the least safe cities in the country.[2] In July 2023, the number of homicides in Cleveland for the year was up by 30 percent compared to the prior year.[3] In addition, the number of felonious assaults with a firearm was up 12 percent, and there had been a nearly 99 percent increase in motor vehicle grand thefts.[4]

{¶ 40} As noted by the trial court, R.C. 306.35(CC) permits the GCRTA to enter into agreements with municipal corporations located within its territorial jurisdiction permitting the transit authority officers to exercise full arrest powers in order to preserve the peace and enforce all applicable laws. Since 2018, the GCRTA police force has been operating without such an agreement with the city of Cleveland.[5] However, it is apparent that GCRTA officers have continued to assist

---

[2] Cleveland.com, *Two Ohio Cities Rank Among Bottom of Safest in the U.S., Analysis Claims* (Nov. 15, 2023), https://www.cleveland.com/metro/2023/11/2-ohio-cities-among-least-safe-in-the-us-analysis-claims.html (accessed Mar. 20, 2024).

[3] WKYC, *Crime on the rise: Numbers show increase in homicides, vehicle thefts in Cleveland in 2023* (July 11, 2023), https://www.wkyc.com/article/news/local/cleveland/numbers-show-homicides-vehicle-thefts-up-cleveland-2023/95-2039a211-a782-4c14-a67a-6e9319b41b7c (accessed Mar. 25, 2024).

[4] *Id.*

[5] Ideasteam Public Media, *Two Private Police Departments Operate in Cleveland without Authorizing Agreements with the City* (April 15, 2022), https://www.ideastream.org/news/government-politics/2022-04-15/rta-police-only-private-force-operating-in-cleveland-without-authorizing-agreement-with-city (accessed Mar. 25, 2024).

the Cleveland Police, such as with the protests in May 2020.[6]  Entering into a new agreement would permit the GCRTA police officers to continue to keep the citizens of Cleveland safe while remaining within the bounds of the law.

{¶ 41} Now is not the time to have less police officers available to apprehend criminals and protect the lives and property of the citizens of Cleveland. The officers in this case witnessed a reckless driver who placed the lives of two innocent children at risk, along with any others driving in the vicinity that day.  The city should take action to ensure that GCRTA officers have the jurisdiction to enforce the law throughout Cleveland and that all officers working in the great city of Cleveland are able to stay safe and go home to their families every night.

---

[6] *Id.*