[Cite as *State v. Beasley*, 2025-Ohio-1599.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-L-083 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| WILLIAM L. BEASLEY, | |
| Defendant-Appellant. | Trial Court No. 2021 CR 000614 |

## OPINION AND JUDGMENT ENTRY

Decided: May 5, 2025
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Eric J. Allen*, The Law Office of Eric J. Allen, Ltd., 4200 Regent, Suite 200, Columbus, OH 43219 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, William Beasley, appeals the denial of his motion for postconviction relief from the Lake County Court of Common Pleas. Appellant was father to Zachary Beasley. After Zachary's admission to the hospital, two of his healthcare providers opined that he was the victim of abuse. Zachary died in the hospital from his injuries. Appellant was convicted for Zachary's murder, in violation of R.C. 2903.02(B).

{¶2} Appellant has raised four assignments of error in which he argues: (1) the trial court abused its discretion by denying his petition for postconviction relief filed under R.C. 2953.21; (2) he was denied the right to a fair trial in his underlying conviction because

the trial court failed to exclude his involuntary confession; (3) the trial court erred in denying his petition for postconviction relief by finding that his trial counsel was not ineffective for failing to file a motion to suppress his confession; (4) the trial court erred in denying his petition for postconviction relief by finding that his trial counsel was not ineffective for failing to call an expert witness on false confessions.

{¶3} After review of the record and the applicable caselaw, we find Appellant's assignments of error are without merit. Appellant's second and third assignments of error rely on facts and evidence that were part of the record of appeal in his direct appeal. Appellant could have made these arguments on direct appeal and failed to do so; they are therefore barred by res judicata. Appellant's fourth assignment of error does adduce new facts and evidence not available on direct appeal. However, the forensic psychological evaluation that Appellant submitted in support of his arguments does not demonstrate that he was prejudiced by trial counsel's failure to obtain an expert to testify at trial about the reliability of his confession or that trial counsel was ineffective for failing to do so. Finally, Appellant's first "catch-all" assignment of error is without merit.

{¶4} Therefore, we affirm the judgment of the Lake County Court of Common Pleas.

**Substantive and Procedural History**

{¶5} On May 11, 2021, Appellant was indicted on nine felony counts for the death of his one-month-old son, Zachary Beasley. On the day of trial, the prosecution moved to dismiss three of the counts. The remaining counts were: Count 1: Murder, an unclassified felony in violation of R.C. 2903.02(B) with a predicate offense of Endangering Children in violation of R.C. 2919.22(B)(1), (E)(2)(d); Count 2: Murder, an unclassified felony in

violation of R.C. 2903.02(B) with a predicate offense of Felonious Assault in violation of R.C. 2903.11(A)(1); Count 3: Involuntary Manslaughter, a first-degree felony violation of R.C. 2903.04(A) with a predicate offense of Endangering Children in violation of R.C. 2912.22(A), (E)(2)(c); Count 4: Endangering Children, a second-degree felony in violation of R.C. 2919.22(B)(1), (E)(2)(d); Count 5: Endangering Children, a second-degree felony in violation of R.C. 2919.22(B)(1), (E)(2)(c); Count 6: Felonious Assault, a second-degree felony in violation of R.C. 2903.11(A)(1).

{¶6}  Appellant filed ten motions in limine to limit or exclude testimony and evidence at trial. At trial, the State called 23 witnesses and Appellant called three expert witnesses on his behalf.

{¶7}  We set forth the following background information in *State v. Beasley*, 2023-Ohio-670 (11th Dist.):

> {¶8}  Zachary Beasley was born on April 27, 2020, to Kaitlin Heinz and Appellant. The two were first-time parents. At birth, Zachary experienced withdrawal symptoms from medication Heinz took during her pregnancy. Therefore, Zachary was kept in the hospital for two days for observation. Zachary was otherwise born healthy, and all initial tests and blood work were normal.
>
> {¶9}  Dr. Joey Korah, Zachary's pediatrician, testified that he conducted a newborn check on May 1 and May 8 and determined that Zachary was healthy and did not note any injuries. Dr. Korah did note that Zachary was fussy, which is a normal symptom of medication withdrawal in babies.
>
> {¶10}  Heinz testified that she cared for Zachary during the day, while Appellant would care for Zachary during the evening. Zachary was fussy and often constipated. Heinz said she and Appellant discussed bicycling Zachary's legs to help soothe him but said that Appellant was the only one who did this.
>
> {¶11}  On May 18, Heinz found a pacifier with blood on it and noticed that Zachary had a bruised finger. She also noticed Zachary "daze off a little more than normal." Heinz thought that the bruise may have been caused by getting pinched in a car seat.

**{¶12}** On May 21, Heinz noticed Zachary gasp in his room and thought his color was pale. She also believed that his eyes looked unusually baggy.

**Medical Treatment and Death of Zachary:**

**{¶13}** On May 22, in the early morning, Appellant called 911 stating that his son had choked and stopped breathing during a feeding. He stated that he performed a rescue breath, that Zachary threw up and began breathing again. He said his breath sounded labored. Heinz recalled that she woke up hearing Appellant screaming "breathe, breathe, Zach's not breathing."

**{¶14}** The Willoughby Fire Department responded and transported Zachary to Hillcrest Hospital. Dr. Mary O'Conner examined Zachary at the emergency room. She testified that he appeared to be breathing normally and was not in any distress, but she noted that he "was a little bit pale and that I thought he seemed somewhat fussy, had some jerky arm movements and seemed sensitive to stimuli." Blood tests revealed abnormal white blood counts which could be indicative of infection and that he had a low hemoglobin count which could be indicative of blood loss. She performed a lumbar puncture to obtain spinal fluid which revealed bloody fluid. She also noted that the spinal fluid came out forcefully, which could indicate increased intracranial pressure. Dr. O'Conner determined it was best to transfer Zachary to the Cleveland Clinic Main Campus.

**{¶15}** On May 22, Dr. Mohammed Hamzah treated Zachary at the Cleveland Clinic Pediatric ICU. In addition to the findings Dr. O'Conner made, Dr. Hamzah noted that Zachary's soft spot on his head was stiff, indicating high pressure in the brain. A CAT scan and MRI revealed acute, subacute, and hyperacute head bleeds which Dr. Hamzah said revealed that the brain bleeds had occurred at different times. A skeletal survey test also revealed fractures in the arms and legs. Tests also showed that Zachary was suffering near continuous seizures.

**{¶16}** Dr. Hamzah said where there is no evidence of a fall, this information suggested nonaccidental trauma often referred to as shaken baby syndrome. Dr. Hamzah contacted a social worker and the hospital's child protective team to inform them of his concerns. He testified that "there is no other explanation how a baby who didn't fall can have fractures in the leg, in the arm, various stages of the rib so for me that is not nonaccidental trauma."

. . .

**{¶17}** On May 29, Heinz and Appellant made the decision to remove Zachary from life support and he passed away. Heinz went to be with her

family to mourn. Appellant arrived soon after and Heinz asked him to leave. Heinz denied ever harming, shaking, jerking, or yanking Zachary in any way.

. . .

**Investigation of Zachary's Death:**

**{¶18}** Willoughby Assistant Police Chief Matthew Tartaglia, Detective Gabriel Sleigh, Detective John Knack, and Detective Charles Krejsa began the investigation of Zachary's injuries on May 22, 2020.

**{¶19}** Late in the day on May 22, Appellant called Detective Krejsa to set up an interview. The interview took place at the Willoughby Police Department on May 26. Detective Krejsa interviewed Heinz, Pink, and Appellant. During his interview, Appellant said that he was 100 percent responsible for Zachary's injuries, though he said that the injuries were accidental and must have been from picking him up or handling him too roughly.

**{¶20}** After the interview, Appellant completed a written statement. In it, Appellant described his conduct with Zachary, saying "that I sometimes get frustrated and would snatch him up out of the crib pretty quickly and that something I did may have been a little rough on him. . . . I never ever thought he was hurt or was trying to hurt him. . . . I feel incredibly stupid and sorry for everything and I'm going to work on what I need to do." Appellant also said that he was confident that Heinz was not responsible for Zachary's injuries. Detective Krejsa said that Heinz and Appellant were the only two primary caregivers for Zachary.

**{¶21}** On May 28, Detective Sleigh went to Appellant's apartment to collect evidence, as well as Appellant's personal data including email, internet search history, and cloud account history. As Detective Sleigh was leaving the apartment, Appellant said that he "would do anything to make this right, he was worried about what was going to happen to him."

**{¶22}** Appellant's internet search history contained a Google search with a query: "can I go to jail for injuring my baby" on May 24, 2020. Appellant clicked on four articles displayed in the search result.

*Id.* at ¶ 8-16, 25, 30-34.

**{¶23}** During trial, Appellant called three expert witnesses, who each testified as to the possible causes of Zachary's injuries.

{¶24} The jury found Appellant not guilty on one count of murder and the predicate felonious assault count and guilty on the remaining counts. The trial court merged the remaining counts for sentencing purposes and sentenced Appellant to 15 years to life in prison for Murder.

{¶25} Appellant filed a direct appeal in which he asserted five assignments of error. We affirmed his conviction in *State v. Beasley*, 2023-Ohio-670 (11th Dist.).

{¶26} On July 6, 2023, Appellant filed a Petition for Postconviction Relief pursuant to R.C. 2953.21. Appellant raised three claims: (1) his statements to police at the Willoughby Police Department and at Appellant's home were involuntary; (2) trial counsel was ineffective for failing to file a motion to suppress the statements Appellant made; and (3) trial counsel was ineffective for failing to hire an expert on false confessions.

{¶27} The trial court granted Appellant three stays to obtain an expert affidavit to support Claim 3. On June 7, 2024, Appellant filed a forensic psychological evaluation, amending his postconviction petition. On September 6, 2024, the State filed its response in opposition to Appellant's petition for postconviction relief.

{¶28} On September 24, 2024, the trial court issued a judgment entry denying Appellant's petition for postconviction relief. The court said that the facts Appellant relied on to support Claims 1 and 2 were all in the record at the time of Appellant's direct appeal and could have been raised at that time. Because he failed to raise them in his direct appeal, the trial court determined they were barred by res judicata.

{¶29} The trial court determined that Claim 3 did not have merit for two reasons. First, the expert psychological evaluation that Appellant submitted directly contradicted his claim that he produced a false confession. The trial court quoted portions of the

evaluation Dr. Scott Bresler conducted, which directly contradicted Appellant's contentions.

**{¶30}** Second, Appellant's trial counsel had previously consulted Dr. Bresler regarding Appellant's police interviews. Therefore, the trial court determined that trial counsel was not ineffective for failing to hire an expert witness on false confessions.

**{¶31}** Appellant timely appealed the trial court's judgment entry and has raised four assignments of error.

## Assignments of Error and Analysis

**Standard of review:**

**{¶32}** R.C. 2953.21, Ohio's postconviction relief statute, provides in pertinent part:

(A)(1)(a) . . . (i) Any person who has been convicted of a criminal offense . . . and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States . . . may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief . . .
. . .

(b) A petitioner under division (A)(1)(a) of this section may file a supporting affidavit and other documentary evidence in support of the claim for relief.
. . .

(D) . . . Before granting a hearing on a petition filed under division (A)(1)(a)(i) . . . of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner . . . . If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.
. . .
(F) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending.

. . .

Case No. 2024-L-083

(H) If the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition.

**{¶33}** "The petitioner bears the burden to show via affidavits, the record, and other supporting materials that sufficient operative facts exist which, if true, would establish substantive grounds for postconviction relief." *State v. Hull*, 2020-Ohio-2895, ¶ 11 (11th Dist.); R.C. 2953.21(D). A petitioner seeking to challenge a conviction through a petition for postconviction relief is not entitled to a hearing. *State v. Calhoun*, 1999-Ohio-102, ¶ 13. A trial court may deny a petition for postconviction relief without an evidentiary hearing "where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *Id.* at ¶ 42.

**{¶34}** If the court dismisses a petition for postconviction relief, R.C. 2953.21(C) mandates that it must issue findings of fact and conclusions of law. *Calhoun* at ¶ 44. Findings are required "'to apprise petitioner of the grounds for the judgment of the trial court and to enable the appellate court to properly determine appeals in such a cause.'" *Id.*, quoting *Jones v. State*, 8 Ohio St.2d 21, 22 (1966).

**{¶35}** However, the trial court need not discuss every issue raised or "engage in an elaborate and lengthy discussion in its findings of fact and conclusions of law." *Id.* at ¶ 45. A trial court "issues proper findings of fact and conclusions of law where such findings are comprehensive and pertinent to the issues presented, where the findings demonstrate the basis for the decision by the trial court, and where the findings are supported by the evidence." *Id.* at ¶ 46.

**{¶36}** We review a trial court's denial of a postconviction petition for an abuse of discretion. *State v. Gondor*, 2006-Ohio 6679, ¶ 45. The trial court serves a gatekeeping

Case No. 2024-L-083

function in the postconviction relief process and is "entitled to deference, including the court's decision regarding the sufficiency of the facts set forth by the petitioner and the credibility of the affidavits submitted." *Id.* at ¶ 52.

{¶37} "The term 'abuse of discretion' . . . is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 2009-Ohio-2089, ¶ 30 (11th Dist.). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004); *State v. Raia*, 2014-Ohio-2707, ¶ 9 (11th Dist.). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] . . . By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Raia* at ¶ 9, quoting *Beechler* at ¶ 67.

{¶38} "A petition for postconviction relief does not provide a petitioner a second opportunity to litigate his or her conviction." *State v. Hobbs*, 2011-Ohio-5106, ¶ 17 (11th Dist.). "The doctrine of res judicata establishes that 'a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal *from that judgment*, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment.'" (Emphasis in original.) *State v. D'Ambrosio*, 73 Ohio St.3d 141, 143 (1995), quoting *State v. Perry*, 10 Ohio St.2d 175, 180 (1967). To overcome res judicata, a petitioner "must adduce evidence outside the

Case No. 2024-L-083

record that demonstrates" the petitioner "could not have appealed the constitutional claims based upon information already in the record." *State v. Gatchel,* 2008-Ohio-1029, ¶ 35 (11th Dist.). Appellant must provide competent, relevant, and material evidence outside of the trial court record in support of a postconviction petition to prevent the claim from being dismissed on res judicata grounds. *State v. Lacy*, 2020-Ohio-1556, ¶ 26 (11th Dist.).

{¶39} Where a petitioner raises the issue of ineffective assistance of counsel, "'the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.'" *State v. Miller*, 2020-Ohio-871, ¶ 9 (11th Dist.), quoting *State v. Jackson*, 64 Ohio St.2d 107 (1980), syllabus.

**First assignment of error:**

{¶40} Appellant's first assignment of error states: "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S PETITION FILED UNDER R.C. 2953.21."

{¶41} Appellant's first assignment of error is a "catch-all" assignment. We will address the substantive issues he has raised in his subsequent assignments.

**Second and third assignments of error:**

{¶42} Appellant's second assignment of error states: "THE TRIAL COURT DENIED THE APPELLANT'S RIGHT TO A FAIR TRIAL WHEN THE TRIAL COURT INTRODUCED AN INVOLUNTARY CONFESSION TAKEN BY THE POLICE IN VIOLATION OF THE FIFTH AMENDMENT AND SIXTH AMENDMENT AND MADE

Case No. 2024-L-083

APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT TO THE FEDERAL CONSTITUTION."

{¶43} Appellant's third assignment of error states: "THE TRIAL COURT ERRED WHEN IT FAILED TO FIND INEFFECTIVE ASSISTANCE FOR FAILING TO FILE A MOTION TO SUPPRESS THE STATEMENT WAS INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT."

{¶44} In his second assignment of error, Appellant contends that his interrogations at the Willoughby Police Department and at his home resulted in an involuntary confession. He cites several factors that lead him to this conclusion, including that he appeared for the interrogation without legal counsel, that he was young and had little experience with the criminal justice system, and that his child was dying, making him more susceptible or compliant to confess falsely.

{¶45} In his third assignment of error, Appellant contends that trial counsel should have filed a motion to suppress his statements to the police because the police used coercive psychological interrogation tactics on him while his child was dying. Further, his lack of experience with law enforcement made him susceptible. He also argues that the investigators had improperly zeroed in on Appellant as the sole possible suspect and engaged in an interrogation with the goal of obtaining a confession rather than arriving at the truth.

{¶46} Both assignments of error rely on facts and evidence that were part of the record in Appellant's direct appeal. Both issues could have been fully raised and litigated on direct appeal, but appellate counsel did not raise these issues. Appellant has not

adduced any material from outside of the trial court record to demonstrate that he could not have made either of these arguments in his direct appeal. This failure requires that we reject his arguments on the basis of res judicata.

{¶47} Accordingly, Appellant's second and third assignments of error are without merit.

**Fourth assignment of error:**

{¶48} Appellant's fourth assignment of error states: "THE TRIAL COURT ERRED WHEN IT FAILED TO FIND INEFFECTIVE ASSISTANCE FOR FAILING TO CALL AN EXPERT ON FALSE CONFESSIONS AND VIOLATED THE APPELLANT'S RIGHTS UNDER THE FIFTH AND SIXTH AMENDMENT MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT."

{¶49} Appellant's fourth assignment of error is not similarly barred by res judicata because Appellant has adduced evidence outside of the record, namely a forensic psychological evaluation by Dr. Scott Bresler, that he could not have relied on in his direct appeal. We therefore address the substantive issue raised in this assignment.

{¶50} Appellant argues that trial counsel was ineffective for failing to call an expert witness on confessions in order to demonstrate that he gave a "coercive compliant confession" that was false and the result of his stress, grief, and the State's coercion, threats, and promises. However, Appellant cannot demonstrate that the trial court abused its discretion by finding trial counsel was not ineffective or that Appellant was prejudiced.

{¶51} First, the trial court granted three stays for Appellant to supplement his postconviction petition with an expert opinion. Appellant ultimately did so and filed Dr.

Case No. 2024-L-083

Bresler's forensic psychological evaluation. That evaluation does not support Appellant's contention that he gave a false "coercive compliant confession."

{¶52} For example, the evaluation states that Appellant, "[w]ithout query or demands . . . offered that he could have been too rough with burping his son or bouncing on his knee[.]" Dr. Bresler concluded that the police interrogation "was at times aggressive and confrontational." However, Appellant's equivocal responses to many police questions seemed to raise their suspicions that [Appellant] was hiding the truth." Dr. Bresler believed that Appellant

> had accepted that he was likely responsible for the baby's injuries, or at least in part. The partial responsibility that he claims is easily understood given that he grossly miscalculated the impact of his actions on the baby's safety and wellbeing. So, to state it differently, [Appellant] seems to have walked into the interrogations having already accepted that his actions caused some kind of injury to the child. . . . Overall, I do not see any substantial police coercion in this interrogation.

{¶53} Dr. Bresler also discounted the possibility that the interrogation produced a false or unreliable confession. He said that to conclude there had been a "coerced-internalized confession"

> one would have to assume that [Appellant] was both vulnerable and highly suggestive at the time of the interrogation with the police, such that he comes to accept that he committed the crimes in question over the course of the interrogation. The problem with that conclusion is found in the way [Appellant] demonstrated physically how he handled the baby (using the plush toy given to him by police). This was an extremely self-incriminating display as it all came from [Appellant], not suggested by the police. . . . Of note, coerced-internalized confessions are extremely hard to prove in a criminal court. It usually requires, at a minimum, that the suspect was inebriated on drugs and/or alcohol at the time period in question, and/or they were laboring with symptoms of serious mental illness (e.g., psychosis). That does not fit the evidence we have in this case.

{¶54} Appellant's own filings do not demonstrate that he was prejudiced by trial counsel's failure to obtain an expert to testify at trial about the reliability of his confession.

Case No. 2024-L-083

{¶55} Further, the State's response to Appellant's petition for postconviction relief contained documentation that detailed how Appellant's trial counsel did in fact take steps to obtain an expert opinion on confessions from the same Dr. Bresler that he ultimately hired to provide the forensic psychological evaluation used for his postconviction petition. On August 8, 2021, Appellant's trial counsel filed, under seal, a motion for payment of expert fees for Dr. Scott Bresler's work on his case. The invoice indicated that Dr. Bresler spent six hours reviewing the case materials, including the State's interrogations of Appellant, and then conducted a telephone consultation with Appellant's trial counsel. Subsequent documentation indicates that Dr. Bresler was paid for this work.

{¶56} While the exact nature of the discussion between trial counsel and Dr. Bresler is not known, it does appear that trial counsel at least engaged in obtaining an expert opinion on confessions but ultimately declined to pursue this strategy at trial. Given the evidence in the postconviction petition record, we will not second guess trial counsel's trial strategy.

{¶57} Appellant cannot demonstrate that the trial court abused its discretion in denying his claim that trial counsel was ineffective or that he was prejudiced thereby.

{¶58} Accordingly, Appellant's fourth assignment of error is without merit.

{¶59} As we have not found any merit in Appellant's second, third, or fourth assignments of error, we similarly find that his first "catch-all" assignment of error is without merit.

Case No. 2024-L-083

{¶60} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2024-L-083

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against Appellant.

_____
JUDGE JOHN J. EKLUND

_____
JUDGE MATT LYNCH,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-L-083